Michelle C. Yau (*pro hac vice* pending)
Mary J. Bortscheller (*pro hac vice* pending)
COHEN MILSTEIN SELLERS & TOLL
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Tel. (202) 408-4600
Fax (202) 408-4699
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com

Daniel Feinberg (SBN No. 135983)
Nina Wasow (SBN No. 242047)
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel. (510) 269-7998
Fax (510) 269-7994
dan@feinbergjackson.com
nina@feinbergjackson.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO ZAVALA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KRUSE-WESTERN, INC., KEVIN KRUSE, GREATBANC TRUST COMPANY, and John and Jane Does 1-30,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

1. This is a civil enforcement action brought pursuant to Sections 502(a)(2) and 502(a)(3) the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3), by Plaintiff, on behalf of himself and other participants and beneficiaries in the Western Milling ("Western Milling") Employee Stock Ownership Plan ("ESOP" or "Plan") arising out of the sale of Kruse-Western, Inc. (the "Company") stock to the ESOP for an inflated value and the resulting loss of tens of millions of dollars to the ESOP.

2. The Western Milling ESOP is a pension plan under ERISA that is designed to be and is primarily invested in the stock of the Company.

3. The claims in the action stem from the creation of the ESOP in November 2015. On November 4, 2015, Kevin Kruse, and John and Jane Does 20-30 (the "Selling Shareholders") sold 100% of outstanding Kruse-Western stock to the newly created Western Milling ESOP for $244,130,400 (the "2015 ESOP Transaction").

4. In contravention of their fiduciary duties, the ESOP trustee, GreatBanc Trust Company ("GreatBanc"); Kevin Kruse; and the other members of the Board of Directors, orchestrated the sale of the Company to the ESOP for greater than fair market value.

5. Specifically, the Selling Shareholders negotiated an inflated sale price with GreatBanc, which unjustly enriched the Selling Shareholders, and caused harm to the ESOP participants, who are current and former employees of the Company. As a result of ERISA violations by the fiduciaries entrusted with their Plan, Plaintiff and the Class have not received all of the hard-earned retirement benefits or the loyal and prudent management of the ESOP to which they are entitled.

6. As alleged below, the sale price for the 2015 ESOP Transaction failed to adequately account for liabilities associated with the recurrent contamination of animal feed produced by Western Milling.

7. Just two months after the 2015 ESOP Transaction, the Kruse-Western stock purchased by the Company's employees was worth almost 90% less than they had paid for it.

8. ERISA §§ 409(a), 502(a)(2) & (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) & (a)(3), authorize participants such as Plaintiff to sue in a representative capacity for losses suffered by

the ESOP. Pursuant to that authority, Plaintiff brings this action on behalf of all participants in the Western Milling ESOP and their beneficiaries for violations of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104, 1106.

9. **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

10. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this District, and because ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process.

11. **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

(a) Defendants may be found in this District, as they transact business in, and/or have significant contacts with this District;

(b) Some Defendants reside in and/or

(c) Some of the alleged breaches took place in this District.

## PARTIES

**Plaintiff**

12. Plaintiff Armando Zavala is a former employee of the Company and a current participant in the ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiff Zavala worked at Western Milling between 2015 until May of 2018, as a trailer mechanic and a truck loader. At the time he left the Company, Plaintiff Zavala was vested in the ESOP. He currently resides in Porterville, CA.

**Defendants**

13. Defendant Kruse-Western, Inc. is and has been since inception of the ESOP, the Sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B); the designated Plan Administrator of the ESOP within the meaning of ERISA § 3(16)(A), § 1002(16)(A); and a named fiduciary of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. Kruse-Western is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29

U.S.C. § 1002(21)(A), by virtue of its position as Plan Administrator and because it exercised discretionary authority or discretionary control respecting the management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

14. Defendant Administration Committee is also a designated Plan Administrator of the ESOP within the meaning of ERISA § 3(16)(A), § 1002(16)(A ), and a named fiduciary of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. The Administration Committee is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), by virtue of its position as Plan Administrator and because it exercised discretionary authority or discretionary control respecting the management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

15. Defendants John and Jane Does 1-10 are the persons serving on the Administration Committee of the ESOP from the date of the 2015 ESOP Transaction to the present, whose identities are unknown to Plaintiff. Once their identities are ascertained, Plaintiff will substitute their names.

16. Defendant Kevin Kruse is and at all relevant times was the President of Kruse-Western. On information and belief, Defendant Kruse is also a member of the Kruse-Western Board of Directors. According to the ESOP Plan Documents, the Board of Directors, acting for the Company, appoints the Trustee of the ESOP. As a result of his membership on the Board of Directors, Mr. Kruse is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

17. Defendants John and Jane Does 10-20 are the other individual members of the Kruse-Western Board of Directors (referred to collectively with Kevin Kruse as the "Board Defendants"), who appointed GreatBanc to be the Trustee of the ESOP in 2015 or who have served on the Board since that time. Each member of the Board of Directors had an ongoing obligation to monitor GreatBanc to ensure it was acting prudently, loyally and in conformance with ERISA's fiduciary requirements and to ensure that the ESOP did not engage in a prohibited transaction when purchasing the Company stock. The names of the Board members other than

Kevin Kruse are unknown to Plaintiff. Once their identities are ascertained, Plaintiff will substitute their names. Each member of the Board of Directors is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

18. John and Jane Does 20-30 are the other selling shareholders who sold their stock in the Company to the ESOP in the 2015 ESOP Transaction, the identities of whom are unknown to Plaintiff at this time. Together with Mr. Kruse, John and Jane Does 20-30 are the "Selling Shareholders." The names of the Selling Shareholders other than Kevin Kruse are unknown to Plaintiff. Once their identities are ascertained, Plaintiff will substitute their names. Each of the Selling Shareholders is a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

19. Defendant GreatBanc Trust Company is the Trustee of the Western Milling ESOP within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). GreatBanc holds, manages and controls the ESOP's assets. GreatBanc is a fiduciary of the Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21) because it exercises discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of the ESOP's assets, and/or have discretionary authority or discretionary responsibility in the administration of the ESOP. On information and belief, Defendant GreatBanc, on behalf of the ESOP, authorized the purchase of Kruse-Western stock from the Selling Shareholders by the ESOP.

## FACTUAL ALLEGATIONS

### Western Milling's History of Monensin Poisoning Issues

20. Kruse-Western, Inc. operates various companies in California, including Western Milling, LLC, OHK Transport LLC, OHK Logistics, LLC, and Winema Elevators, LLC.

21. Western Milling, LLC, is a milling and feed manufacturer.

22. According to its website, Western Milling aspires "to be the leading and most diverse agriculturally based, nutrient solutions business in the Western United States."

23. At all relevant times, Western Milling manufactured Western Blend Horse Feed and other animal feeds. Manufacturing animal feed for different species requires a high level of care to avoid cross-contamination. For example, monensin is an ionophore antibiotic that is added to some cattle and poultry feeds. Monensin, however, is highly poisonous to horses.

24. In September 2015, 21 horses died and 28 other horses were severely sickened at a horse ranch in Clovis, California, due to monensin poisoning caused by Western Blend Horse Feed. Many of the horses suffered a slow and painful death with symptoms including foaming at the mouth, muscle wasting, damage to the heart, colic, sweating, kidney failure, respiratory distress, and the inability to stand. Some of the horses had to be euthanized.

25. In September 2015, Western Milling issued a recall for Western Blend Horse Feed due to possible monensin contamination.

26. In 2016, the same facility improperly mixed the same livestock drug into medicated cattle feed, which contributed to the deaths of several dairy calves.

27. A lawsuit was filed against Western Milling in Fresno Superior Court in February 2016, and Western Milling agreed in 2018 to pay to pay $2.4 million to plaintiffs to settle claims arising from the monensin poisoning caused by its horse feed.

28. Upon information and belief, Western Milling was aware of contamination in its feed products prior to the September 2015 incident. Between December 2009 and July 2010, the United States Food and Drug Administration found "impermissibly high" samples of monensin in feed samples produced by the Company. Western Milling recalled horse feed in 2011 and turkey feed in 2010 and 2011 due to monensin contamination.

29. In addition to the lawsuit, the California Department of Food and Agriculture fined Western Milling $726,000 and revoked their commercial feed license "for repeated and multiple violations." Western Milling agreed to stop production of all horse feed at its Goshen, California plant by April 15, 2017.

30. Western Milling also paid over $2 million to settle claims of the owners of cattle that consumed excessively high levels of monensin in August 2014. More than 850 cattle died as a result of consuming feed produced by Western Milling.

31. Western Milling continued to be plagued by monensin contamination problems after the 2015 ESOP Transaction. In September 2016, 87 calves died and 46 other calves were severely sickened after consuming Western Milling-produced feed that contained excessive levels of monensin.

32. As a result of repeated monensin contamination incidents, Western Milling discontinued the manufacturing of horse and other specialty feeds at its Goshen mill, exited the horse feed business for about a year, and started contracting-out the manufacture of horse feed. Western Milling spent approximately $5.5 million to construct a new dedicated horse feed mill separate from its cattle feed mill.

33. Upon information and belief, the feed mill industry recognized the need for dedicated production lines prior 2015. Major producers of animal feed had "dedicated lines" in their mills, meaning that only horse feed was produced in that section of the mill, and other areas of the mill were used to produce other products, such as those with the inclusion of monensin or other ionophores.

34. In addition, Western Milling and its operating companies faced significant liability at the time of the 2015 ESOP Transaction due to wage and hour violations at its California facilities.

**The Western Milling ESOP**

35. The ESOP covers employees of Western Milling, LLC, OHK Transport LLC, OHK Logistics, LLC, and Winema Elevators, LLC.

36. According to the Articles of Incorporation obtained from the California Secretary of State, Kruse-Western, Inc. was incorporated on September 11, 2015.

37. According to the ESOP Plan Documents, the Board of Directors, acting for the Company, appoints the Trustee of the ESOP.

38. Prior to the 2015 ESOP Transaction, all or nearly all of the Company Stock was owned by the Selling Shareholders.

39. The ESOP was created on November 4, 2015 to purchase 100% of the Company Stock from the Selling Shareholders.

40. On that same day, GreatBanc, acting as Trustee of the ESOP, caused the ESOP to purchase 100% of Kruse-Western stock from the Selling Shareholders for $244,130,400. The ESOP borrowed the entire $244,130,400 to fund the purchase price paid to the Selling Shareholders.

41. Less than two months later, on December 31, 2015, the value of the Company was just $26,600,000, which meant that the Company stock lost almost 90% of its value in less than 2 months.

42. One year later, the Company had further dropped in value, and was worth just $24,800,000.

43. By December 31, 2017, the Company had not materially regained the value paid by ESOP participants. The value of the Company was just $27,400,000 at the end of 2017 which represents a decline of 86% from the purchase value.

44. The ESOP paid more than fair market value in the 2015 ESOP Transaction. Based on the available information, the purchase price was based in part on a valuation report that was unreliable.

45. Based on the available information, the 2015 ESOP Transaction price was based on unrealistic management projections and did not adequately reflect the future revenue and earnings given the recurring monensin contamination in Western Milling's animal feed.

46. Kruse-Western and its officers knew of the problems with monensin contamination of Western Milling's feed prior to the 2015 ESOP Transaction, but the financial projections used to value Kruse-Western's stock did not adequately reflect these issues.

47. Kruse-Western and its officers knew or should have known of the Company's potential liability for wage and hour violations prior to the 2015 ESOP Transaction but the

financial projections used to value Kruse-Western's stock did not adequately reflect this potential liability.

48. A prudent fiduciary who had conducted a prudent investigation would have concluded that the ESOP was paying more than fair market value for the Kruse-Western stock and/or the debt incurred in connection with the Transaction was excessive.

49. The valuation report and fairness opinion obtained by GreatBanc for the 2015 ESOP Transaction was not provided to Plaintiff or other the participants of the Western Milling ESOP.

50. The extreme decline in value of the Company stock owned by the ESOP following the 2015 ESOP Transaction should have caused GreatBanc as well as the Board Defendants, at a minimum, to investigate whether the ESOP had paid more than fair market value in the 2015 ESOP Transaction. To the extent that any of the Defendants had conducted such an investigation, that investigation as well as any corrective measures would have been reported in one of the Form 5500s filed with the Department of Labor. As none of the Form 5500s report any such investigation or corrective actions, none of the Defendants investigated whether fiduciary violations had occurred in the 2015 Transaction despite numerous red flags that should have raised concerns.

51. As a direct and proximate result of the actions of the Defendants related to the 2015 ESOP Transaction, the ESOP and its participants have suffered at least tens of millions of losses in retirement assets, for which all Defendants are jointly and severally liable.

## V.   CLASS ACTION ALLEGATIONS

41. Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all participants in the Western Milling ESOP from November 4, 2015 or any time thereafter who vested under the terms of the Plan and those participants' beneficiaries. Excluded from the Class are Defendants and their immediate family, any fiduciary of the Plan; the officers and directors of Kruse-Western (including any of its subsidiaries or affiliates), or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

42. **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. According to the 2017 Form 5500 filed with the Department of Labor, which is the most recent available Form 5500, as of December 31, 2017, there were 393 participants, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP.

43. **Commonality.** The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts (or failure to act). Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    a. Whether Defendants engaged in a prohibited transaction under ERISA by permitting the ESOP to purchase Kruse-Western stock from the Selling Shareholders for more than adequate consideration in the 2015 ESOP Transaction;

    b. Whether GreatBanc engaged in a prudent investigation of the proposed purchase of Kruse-Western stock by the ESOP in the 2015 ESOP Transaction;

    c. Whether GreatBanc breached a fiduciary duty to ESOP participants by causing the ESOP to purchase Kruse-Western stock in 2015 for more than fair market value;

    d. Whether the Board Defendants breached their fiduciary duties by failing to adequately monitor GreatBanc;

    e. The amount of losses suffered by the ESOP as a result of Defendants' fiduciary violations and/or other appropriate remedial and equitable relief.

42. **Typicality.** Plaintiff's claims are typical of those of the Class because their claims arise from the same event, the sale of the Company to the Western Milling ESOP. Specifically, Plaintiff challenges the legality of a plan-wide transaction, whereby stock is allocated to all participants' accounts based on the same valuation of the Company. As a result, Plaintiff, like other ESOP participants in the Class, has received less in his ESOP account based on the same purchase price of Kruse-Western stock, and continues to suffer such losses because Defendants have failed to correct the overpayment by the ESOP.

43. Because Plaintiff seeks relief on behalf of the Western Milling ESOP pursuant to § 502(a)(2) of ERISA, 29 U.S.C. 1132(a)(2), his claims are not only typical of, but the same as, a claim under § 502(a)(2) brought by any other Class member.

44. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff does not have any interests antagonistic to or in conflict with those of the Class. He understands that this matter cannot be settled without the Court's approval.

45. Defendants do not have any unique defenses that would interfere with Plaintiff's representation of the Class.

46. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA and employee benefits litigation, and with particular experience and expertise in ESOP litigation.

47. **Rule 23(b)(1)(A).** Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the ESOP and their participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the ESOP.

48. **Rule 23(b)(1)(B).** Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B). Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the ESOP, engaged in prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

49. **Rule 23(b)(2).** Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class

as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

50.   **Rule 23(b)(3).** Additionally, and alternatively, class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to all Class members predominate over any questions affecting individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this action. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for Kruse-Western stock in the 2015 ESOP Transaction. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

51.   A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the ESOP, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire ESOP. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

52.   The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

a) The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b) No other litigation concerning this controversy has been filed by any other members of the Class.

c) This District is most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) the ESOP is administered in part in this District, (iii) certain Defendants can be found in this District, and (iii) certain non-party witnesses, are located in this District.

53. The names and addresses of the Class are available from the ESOP. Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

## COUNT I

**Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. §§ 1106(a)**

(Against Selling Shareholders and GreatBanc)

41. Plaintiff incorporates the preceding paragraphs as though set forth herein.

42. ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

43. ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include any fiduciary ... of such employee benefit plan", and "an employee, officer or director or a 10 percent or more shareholder" of an employer covered by the Plan. 29 U.S.C. § 1002(14)(A), (H). As such, Defendants Kevin Kruse and the Selling Shareholders are "parties in interest" within the meaning of ERISA § 3(14).

44. ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for

adequate consideration. The burden is on the fiduciary and the parties-in-interest to demonstrate that conditions for the exemption are met.

45. ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary." ERISA § 3(18)(B) requires that the fiduciary or party-in-interest show that the price paid must reflect the fair market value of the asset at the time of the transaction, and the fiduciary conducted a prudent investigation to determine the fair market value of the asset.

46. As Trustee, GreatBanc caused the Western Milling ESOP to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), by approving the transaction for more than fair market value and for failing to ensure that the ESOP paid no more than fair market value for the Western-Kruse stock purchased in the 2015 ESOP Transaction. Specifically, the ESOP paid more than fair market value for shares sold by the Defendant Selling Shareholders.

47. Kevin Kruse as President of the Company knew that the valuation was based on inflated revenue and earnings projections.

48. On information and belief, the other Selling Shareholders were also top executives or directors of the Company and thus likewise knew that the valuation was based on inflated revenue and earnings projections.

49. All the other Selling Shareholders participated in the sale of the Company as they were parties to the transactions and received in total $244 million in cash and loans from the ESOP for the Company.

50. As such, Defendants Selling Shareholders were aware of sufficient facts that the 2015 ESOP Transaction constituted a prohibited transaction with parties-in-interest. As parties-in-interest, Defendants Selling Shareholders are liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

## COUNT II

**Prohibited Transaction in Violation of ERISA § 406(b), 29 U.S.C. §§ 1106(b)**
(Against All Board Defendants Who Sold Kruse-Western Stock to the ESOP)

41. Plaintiff incorporates the preceding paragraphs as though set forth herein.

42. ERISA § 406(b), 29 U.S.C. § 1106(b), prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account[.]" 29 U.S.C. § 1106(b)(1).

43. As members of the Board of Directors, the Board Defendants were fiduciaries of the Western Milling ESOP at the time of the 2015 ESOP Transaction.

44. Any Board Defendants who caused the Western Milling ESOP to buy their stock in the Company through the 2015 ESOP Transaction dealt with the ESOP assets in their own interest within the meaning of ERISA § 406(b)(1).

45. ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2) mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants[.]" 29 U.S.C. § 1106(b)(2).

46. Any Board Defendants who sold shares of Kruse-Western stock to the Western Milling ESOP acted as an adverse party to the ESOP in the 2015 ESOP Transaction within the meaning of ERISA § 406(b)(2).

47. ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) prohibits a plan fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3).

48. Any Board Defendants who sold shares of Kruse-Western stock to the Western Milling ESOP received consideration for their own personal accounts through the 2015 ESOP Transaction within the meaning of ERISA § 406(b)(3).

49. All Board Defendants who sold their shares of Kruse-Western stock to the Western Milling ESOP in the 2015 ESOP Transaction violated ERISA §§ 406(b)(1)-(3), 29 U.S.C. §§ 1106(b)(1)-(3) for which they are liable to restore the losses caused by these prohibited transactions, to disgorge profits or other appropriate remedial and equitable relief.

### COUNT III

**Breach of Fiduciary Duties Under ERISA §§ 404(a)(1)(A) and (B),**

**29 U.S.C. §§ 1104(a)(1)(A) and (B)**

(Against GreatBanc)

50. Plaintiff incorporates the preceding paragraphs as though set forth herein.

51. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan,"

52. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

53. In the context of a sale of the sponsoring company/employer to an ESOP, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the ESOP and its participants pay no more than fair market value in a transaction involving the ESOP's assets and the participants' account in the ESOP.

54. Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

55. GreatBanc was required to undertake an appropriate and independent investigation of the fair market value of the Kruse-Western stock before approving the 2015 ESOP Transaction in order to fulfill its fiduciary duties. Among other things, GreatBanc was required to conduct a thorough and independent review of any "independent appraisal," to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the 2015 ESOP Transactions; to investigate the credibility of the management assumptions and earnings projections underlying the valuation, and to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense.

56. An appropriate investigation would have revealed that the valuation used for the 2015 ESOP Transaction and the $244,130,400 price ultimately paid by the ESOP did not reflect the fair market value of the Kruse Western stock purchased by the ESOP.

57. An appropriate investigation would have revealed that it was imprudent for the ESOP to take on excessive debt.

58. An appropriate investigation would have revealed that purchasing the Company for $244,130,400 was not in the best interest of the ESOP participants.

59. After the 2015 ESOP Transaction, GreatBanc was obligated to remedy the ESOP's overpayment for Kruse-Western stock, including as necessary correcting the prohibited transaction by attempting to restore the amount overpaid by the ESOP to the Selling Shareholders back to the ESOP, including, if necessary, by filing a lawsuit on behalf of the ESOP.

60. By causing the ESOP to engage in the 2015 ESOP Transaction, and failing to restore the losses caused thereby, GreatBanc breached its fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B) and caused losses to the ESOP and the individual retirement accounts of the participants in the ESOP.

## COUNT IV

**Failure to Monitor in Violation of ERISA §§ 404(a)(1)(A) and (B)**

**29 U.S.C. §§ 1104(a)(1)(A) and (B)**

(Against Board Defendants)

61. Plaintiff incorporates the preceding paragraphs as though set forth herein.

62. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires that a plan fiduciary act "for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan,"

63. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) requires that a plan fiduciary act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

64. ERISA § 404(a)(1)(A) and (B) requires that any fiduciary with the power to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation that the appointed fiduciary is qualified to serve in the position as fiduciary and to monitor the appointed fiduciary to ensure that he/she remains qualified to act as fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA. If the appointed fiduciary has violated or continues to violate ERISA, the monitoring fiduciary must remove the appointed fiduciary and attempt to restore any losses to the plan caused by the ERISA violations.

65. The ESOP Plan Document provides that GreatBanc was appointed by the Board Defendants.

66. The Board Defendants breached their duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) &(B) because they failed to monitor GreatBanc to ensure that the ESOP paid no more than fair market value for Company stock in the November 2015 and to ensure that GreatBanc took remedial action after the 2015 ESOP Transaction.

## VIII.   PRAYER FOR RELIEF

Plaintiff on behalf of himself and the Class, prays that judgment be entered against Defendants on each Count and that the Class be awarded the following relief:

A. Declare that Defendants have each breached their fiduciary duties under ERISA;

B. Declare that Defendants GreatBanc and the Selling Shareholders have each engaged in prohibited transactions in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), through the 2015 ESOP Transaction;

C. Enjoin GreatBanc and the Board Defendants from further violations of their fiduciary responsibilities, obligations and duties;

D. Remove GreatBanc as the Trustee of the Western Milling ESOP and/or bar it from serving as a fiduciary of the ESOP in the future

E. Appoint a new independent fiduciary to manage the Western Milling ESOP and order the costs of such independent fiduciary be paid for by Defendants;

F. Order each fiduciary found to have violated ERISA, including breaching his/her/its fiduciary duties to the ESOP to jointly and severally pay such amount to restore all the

losses resulting from their breaches and to disgorge all profits made through use of assets of the ESOP;

G.  Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to, by forfeiting their ESOP accounts, providing an accounting for profits, surcharge, imposing a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants;

H.  Order Defendants to provide all accountings necessary to determine the amounts Defendants must remit to the ESOP to restore losses and to disgorge any profits fiduciaries obtained from the use of ESOP assets or other violations of ERISA § 404 and 406, 29 U.S.C. § 1104 and 1106;

I.  To the extent necessary, issue an injunction or order creating a constructive trust into which all ill-gotten gains, fees and/or profits paid to any of the Defendants in violation of ERISA shall be placed for the sole benefit of the ESOP; s participants and beneficiaries.  This includes, but is not limited to, the ill-gotten gains, fees and/or profits paid to any of the Defendants that have been wrongly obtained as a result of breaches of fiduciary duty or prohibited transactions or other violations of ERISA;

J.  Order pursuant to ERISA § 206(d)(4) that any amount to be paid to the ESOP accounts of the Class can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability.

K.  ESOP violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void.

L.  Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or ordering payment of fees and expenses to Plaintiffs' counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

M.  Issue a preliminary and permanent injunction barring Defendants and each of them from seeking to enforce any indemnification agreement between Defendants and the ESOP or Kruse-Western and declare that any such indemnification agreement violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void;

N.   Order Defendants and each of them to reimburse the ESOP or Kruse-Western for any money advanced by the ESOP or Kruse-Western, respectively, under any indemnification agreement or other instrument between Defendants and the ESOP or Kruse-Western;

O.   Order that Defendants and each of them provide other appropriate equitable relief to the ESOP, including but not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

P.   Award pre-judgment interest and post-judgment interest; and

Q.   Award such other and further relief that the Court determines that Plaintiffs and the Class are entitled to pursuant to ERISA § 502(a)(2) and/or § 502(a)(3), 29 U.S.C. § 1132(a)(2) and/or 1132(a)(3) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

DATED: February 19, 2019

Respectfully Submitted,

By: _____
Daniel Feinberg

Daniel Feinberg (SBN No. 135983)
Nina Wasow (SBN No. 242047)
FEINBERG, JACKSON, WORTHMAN
& WASOW, LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel. (510) 269-7998
Fax (510) 269-7994
dan@feinbergjackson.com
nina@feinbergjackson.com

Michelle C. Yau
Mary J. Bortscheller
COHEN MILSTEIN SELLERS & TOLL
1100 New York Avenue, N.W. Suite 500
Washington, D.C. 20005
Tel. (202) 408-4600
Fax (202) 408-4699
myau@cohenmilstein.com
mbortscheller@cohenmilstein.com

*Counsel for Plaintiff and the Proposed Class*