1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARMANDO ZAVALA,                      No. 1:19-cv-00239-DAD-SKO

12              Plaintiff,

13        v.                              ORDER GRANTING IN PART
                                          DEFENDANTS' MOTION TO DISMISS
14   KRUSE-WESTERN, INC., et al.,
                                          (Doc. No. 17)
15              Defendants.

16

17        This matter is before the court on the motion of defendants Kruse-Western, Inc., Kevin

18   Kruse, and GreatBanc Trust Company (collectively, "defendants") to dismiss the complaint.

19   (Doc. No. 17.)  On July 16, 2019, that motion came before the court for hearing.  Attorney Nina

20   R. Wasow appeared on behalf of plaintiff Armando Zavala, and attorneys Lynn E. Calkins,

21   Chelsea A. McCarthy, and Ian B. Wieland appeared on behalf of defendants.  Having considered

22   the parties' briefing and heard from counsel, and for the reasons that follow, defendants' motion

23   will be granted in part.

24                              **BACKGROUND**

25        This case arises from the sale of stock of defendant Kruse-Western, Inc. ("Kruse-

26   Western") to the Western Milling Employee Stock Ownership Plan (the "ESOP").  According to

27   the allegations of the complaint, Western Milling, LLC ("Western Milling") is a milling and feed

28   manufacturer, and at all relevant times manufactured Western Blend Horse Feed and other animal

                                          1

feed blends. (Doc. No. 1 ("Compl.") at ¶¶ 21, 23.) In some instances, manufacturing animal feed for different animals requires segregating the feeds from one another. (*Id.* at ¶ 23.) As relevant here, an antibiotic known as monensin can be added to cattle and poultry feed, but that same antibiotic is toxic to horses. (*Id.*) In September 2015, 21 horses died and many others became ill in Clovis, California due to monensin poisoning caused by Western Blend Horse Feed. (*Id.* at ¶ 24.) That same month, Western Milling issued a recall of its Western Blend Horse Feed due to possible contamination. (*Id.* at ¶ 25.) In 2016, the same facility that manufactured the tainted Horse Feed improperly mixed monensin into medicated cattle feed, contributing to the deaths of several dairy calves. (*Id.* at ¶ 26.)

In February 2016, Western Milling was named as defendant in an action filed in Fresno County Superior Court, and ultimately agreed to pay $2.4 million to the plaintiffs to settle claims arising from monensin poisoning caused by its horse feed. (*Id.* at ¶ 27.) In addition, the California Department of Food and Agriculture fined Western Milling $726,000.00 and revoked their commercial feed license "for repeated and multiple violations." (*Id.* at ¶ 29.) Western Milling agreed to stop production of all horse feed at its Goshen, California plant by April 15, 2017. (*Id.*) Western Milling separately paid over $2 million to settle claims of the owners of cattle that consumed excessively high levels of monensin in 2014. (*Id.* at ¶ 30.) More than 850 cattle died as a result of consuming feed produced by Western Milling.[1] (*Id.*) In addition to these liabilities, Western Milling and its operating companies faced significant liability due to wage and hour violations at its California facilities. (*Id.* at ¶ 34.)

The complaint alleges that, according to the Articles of Incorporation obtained from the California Secretary of State, Kruse-Western was incorporated on September 11, 2015. (*Id.* at ¶ 36.) Kruse-Western, in turn, operates various companies including Western Milling, OHK Transport LLC, OHK Logistics, LLC, and Winema Elevators, LLC. (*Id.* at ¶ 20.) As described in plaintiff's opposition to the pending motion to dismiss, Kruse-Western is the "parent company"

---

[1] The undersigned has previously confronted these facts in the context of an insurance dispute. *See generally Praetorian Ins. v. W. Milling, LLC*, No. 1:15-cv-00557-DAD-EPG, 2017 WL 4284717 (E.D. Cal. Sept. 27, 2017).

of these entities. (Doc. No. 23 at 11.) Less than two months later, on November 4, 2015, the ESOP was created. (Compl. at ¶ 39.) The ESOP is a pension plan under the Employee Retirement Income Security Act ("ERISA") that is primarily invested in the stock of Kruse-Western. (*Id.* at ¶ 1–2.) On the same day the ESOP was created, GreatBanc Trust Company ("GreatBanc") caused the ESOP to purchase 100 percent of the outstanding shares of Kruse-Western stock. (*Id.* at 39–40.) GreatBanc was appointed trustee of the ESOP by defendants John and Jane Doe 10–20, the individual members of the Kruse-Western Board of Directors (the "Board defendants"). (*Id.* at ¶ 17.) The ESOP purchased the stock from defendant Kruse and John and Jane Doe 20–30 (the "selling shareholders"), which the ESOP financed by borrowing the entire purchase price of $244 million from Kruse-Western. (*Id.* at ¶ 40.)

Less than two months later, on December 31, 2015, the value of Kruse-Western had dropped to $26,600,000.00. (*Id.* at ¶ 41.) By the end of 2016, that value had fallen still further, to $24,800,000.00. (*Id.* at ¶ 42.) By the end of 2017, the value had recovered only marginally, to $27,400,000.00. (*Id.* at ¶ 43.) Thus, as of that date, the ESOP had purchased Kruse-Western's outstanding stock for almost ten times its actual value.

The complaint alleges that the sale to ESOP did not adequately reflect the future revenue and earnings, given the recurring monensin contamination in Western Milling's animal feed, nor did it reflect Kruse-Western's potential liability for its wage and hour law violations. (*Id.* at ¶¶ 45, 47.) It is also alleged that Kruse-Western and its officers knew of these problems at the time of the sale, but the financial projections used to value Kruse-Western's stock did not account for them. (*Id.* at ¶ 46.)

Plaintiff, a former Kruse-Western employee and current participant in the ESOP (*id.* at ¶ 12), alleges four causes of action against defendants, all of which arise under provisions of ERISA. Count one alleges a violation of 29 U.S.C. § 1106(a) against the selling shareholders and GreatBanc, alleging that they engaged in a transaction prohibited by ERISA. Count two alleges a violation of 29 U.S.C. § 1106(b) against the Board defendants who sold Kruse-Western stock to the ESOP, and also contends that these individuals engaged in a transaction prohibited by ERISA. Count three alleges that defendant GreatBanc violated 29 U.S.C. § 1104(a)(1)(A) and (B) by

breaching its fiduciary duties to the ESOP. Count four alleges that the Board defendants violated 29 U.S.C. § 1104(a)(1)(A) and (B) by failing to monitor GreatBanc and ensure that the ESOP paid no more than fair market value for the Kruse-Western stock. On April 15, 2019, defendants moved to dismiss the complaint. (Doc. No. 17.) Plaintiff filed an opposition on June 25, 2019. (Doc. No. 23.) Defendants filed a reply on July 2, 2019. (Doc. No. 25.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws

in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

Broadly speaking, defendants advance two arguments as to why dismissal of plaintiff's complaint is warranted. First, defendants argue for dismissal under Federal Rule of Civil Procedure 10(b), which provides that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" if doing so "would promote clarity." (Doc. No. 17-1 at 3–6.) Second, defendants contend that the complaint as pleaded is insufficient under Rule 8(a)(2) and should therefore be dismissed pursuant to Rule 12(b)(6). (*Id.* at 7–15.) Each argument is addressed in turn.

### A.  Dismissal Pursuant to Rule 10(b)

The court first analyzes defendants' argument that the complaint should be dismissed under Federal Rule of Civil Procedure 10(b). That rule states that:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). Stating separate claims for each transaction or occurrence "permit[s] pleadings to serve their intended purpose to frame the issue and provide[s] the basis for informed pretrial proceedings." *Bautista v. Los Angeles County*, 216 F.3d 837, 841 (9th Cir. 2000). "Although the rules do not specifically authorize motions to require a separate statement of claims [under Rule 10(b)], courts have used their inherent power to issue such orders and have dismissed actions for noncompliance under Rule 41(b)." *Id.* Utilizing this rule, district courts have required plaintiffs to draft amended complaints sufficient to permit defendants to "reasonably frame a responsive pleading." *Bobosky v. adidas AG*, No. 3:10-cv-00630-PK, 2011 WL 13250946, at *2 (D. Or. June 21, 2011); *see also Hendrix v. Health & Soc. Servs. of Solano Cty.*, No. 2:15-cv-02689-MCE-EFB, 2017 WL 4004168, at *5 (E.D. Cal. Sept. 12, 2017) ("Any amended complaint shall also use clear headings to delineate each claim alleged and against

5

which defendant or defendants the claim is alleged, as required by Rule 10(b)[.]"), *report and recommendation adopted*, 2017 WL 4340166 (E.D. Cal. Sept. 29, 2017).

Here, however, the court finds that Rule 10(b) is inapplicable. By its terms, that provision applies only where a single cause of action encompasses multiple transactions or occurrences. Thus, so long as each cause of action addresses only a single transaction or occurrence, Rule 10(b) is satisfied. *See Bobosky*, 2011 WL 13250946, at *4 ("Rule 10(b) states that each claim founded on a separate transaction or occurrence must be stated in a separate count if doing so would promote clarity. Fed. R. Civ. P. 10(b). Defendants argument fails because plaintiffs' claims arise out of a single transaction, and because Rule 10(b) does not apply in that scenario."); *Dimmick v. Regents of Univ. of Cal.*, No. C 04-4965 PJH, 2006 WL 279350, at *4 (N.D. Cal. Feb. 3, 2006) ("The court declines to break down the first claim into two separate claims . . . because contrary to the other claims which do appear to involve separate occurrences, this claim involves the same facts and the same underlying transactions."); 5A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1324 (4th ed. 2019) ("Rule 10(b) does not make it necessary to use separate counts to state different theories of recovery or to seek relief under separate statutory provisions, although the pleader may choose to do so for clarity or out of caution.") (footnote omitted). Because here all four causes of action stated in the complaint arise out of ESOP's purchase of Kruse-Western's stock, Rule 10(b) provides no basis for dismissal.

Next, defendants argue that the complaint is deficient under Rule 8(a) in multiple respects. (Doc. No. 17-1 at 6–7.) Most of these arguments are mooted by the discussion that follows and will not be addressed here. However, the court does wish to address defendants' contention that plaintiff has failed to meet its pleading requirements because it has alleged claims against Doe defendants. (*Id.*) As a general rule, "Doe pleading" is disfavored in federal court. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). However, the practice is not entirely forbidden, particularly where the identities of alleged defendants are unknown prior to filing the complaint. *Id.*; *see also Lopes v. Vieira*, 543 F. Supp. 2d 1149, 1152 (E.D. Cal. 2008). Here, the complaint lists three groups of Doe defendants: (1) persons serving on the Administration Committee of the ESOP; (2) the individual members of the Kruse-Western Board of Directors; and (3) the

shareholders who sold their stock to the ESOP. (Compl. at ¶¶ 15, 17, 18.) Of the second and third groups, only defendant Kruse is personally known. However, it is apparent to the court that the identities of these individuals are almost certainly known to defendants, and that this information should be readily ascertainable in discovery. Under these circumstances, plaintiff will be permitted to proceed on claims asserted only against Doe defendants.

**B.      Dismissal Pursuant to 12(b)(6)**

Next, the court addresses defendants' argument that each cause of action within the complaint is deficient under Rule 8(a) and should therefore be dismissed pursuant to Rule 12(b)(6).

1.      First Cause of Action

The first cause of action alleges that the selling shareholders and GreatBanc engaged in a prohibited transaction in violation of 29 U.S.C. § 1106(a). Defendant argues that this cause of action must be dismissed because (1) it fails to assert that defendant Kruse and the selling shareholders were fiduciaries to the ESOP, and (2) the complaint does not include a prayer for "appropriate equitable relief," even though plaintiff is required to do so by law.

According to the complaint, defendant GreatBanc is unquestionably a fiduciary to the ESOP (*see* Compl. at ¶ 19), because of which plaintiff may state a cognizable claim against it under § 1106(a) for engaging in a prohibited transaction. Defendants do not appear to contest this conclusion. Rather, they argue that, as to the selling shareholders (of which defendant Kruse is a member), the complaint contains no allegations indicating that they are themselves fiduciaries to the ESOP. The argument is persuasive. Rather than alleging that the selling shareholders are fiduciaries, the complaint instead defines the selling shareholders as "parties in interest" within the meaning of 29 U.S.C. § 1002(14). (Compl. at ¶ 18.) Title 29 U.S.C. § 1332(a)(3) provides "a cause of action to remedy plan or ERISA violations—including prohibited interested-party transactions—with 'appropriate equitable relief.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019), *petition for cert. filed*, No. 19-77 (U.S. July 16, 2019). To state such a claim, however, the complaint must contain allegations that the relief sought is equitable rather than legal. The failure by a plaintiff to seek appropriate equitable relief therefore warrants

dismissal of the claim. *See id.* at 659 ("We conclude that the relief plaintiffs seek is not equitable and accordingly affirm the district court's dismissal of plaintiffs' prohibited transaction claim."). Thus, whether plaintiff has stated a cause of action against the selling defendants turns on whether the complaint seeks equitable relief.

"[T]he term 'equitable relief' . . . is limited to 'those categories of relief that were *typically available in equity*' during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate)." *Montanile v. Bd. of Trs.*, ___ U.S. ___, ___, 136 S. Ct. 651, 657 (2016) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). The label a plaintiff attaches to a particular form of relief is not dispositive; rather, whether a remedy is legal or equitable "depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006) (internal quotation marks and brackets omitted); *see also Mathews v. Chevron Corp.*, 362 F.3d 1172, 1185 (9th Cir. 2004) ("In determining whether an action for equitable relief is properly brought under ERISA, we look to the substance of the remedy sought.").

In the specific context of ERISA claims, whether the relief sought can be characterized as legal or equitable turns on whether the money or property sought is "in the defendants' possession." *See Depot*, 915 F.3d at 661. To that end, the Ninth Circuit in *Depot* set forth three methods by which a plaintiff could allege that the money or property is in the possession of defendants and therefore state a claim under § 1132(a)(3). First, a plaintiff may "identif[y] a specific fund to which they are entitled." *Id.* at 662. Second, a complaint may allege "the existence of a general account in which the ill-gotten funds . . . were commingled, such that the product of those funds would be traceable." *Id.* at 663. And third, a plaintiff may allege that defendants' account balance remained above the surcharge amounts for purposes of the "lowest

/////

/////

/////

/////

/////

intermediate balance" theory.[2]  *Id.*  The court in *Depot* reasoned that absent such allegations, "a judgment in plaintiffs' favor would have no connection to any particular fund whatsoever. Defendants would simply be required to pay a certain amount of money, and they could satisfy that obligation by dipping into any pot they like."  *Id.* at 662 (internal quotation marks omitted); *see also Montanile*, 136 S. Ct. at 658–59 (noting that "[e]quitable remedies are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing rather than a right to recover a sum of money generally out of the defendant's assets") (internal quotation marks and ellipses omitted).

The complaint in this case contains no such allegations.  With respect to the selling shareholders, the allegations of the complaint state merely that they "participated in the sale of the Company . . . and received in total $244 million in cash and loans from the ESOP for the Company."  (Compl. at ¶ 49.)  There is no allegation that the proceeds from this sale were directed to any particular account over which plaintiff might have a valid claim.  *See, e.g.*, *Sereboff*, 547 U.S. at 363 (finding that the relief was properly characterized as equitable because "it sought its recovery through a constructive trust or equitable lien *on a specifically identified fund*, not from the Sereboffs' assets generally") (emphasis added).

Recognizing the difficulties posed by the holding in *Depot*, plaintiff urges the court to effectively disregard it.  Citing to district court decisions issued well prior to the decision in *Depot*, plaintiff argues that there is no requirement "that the funds or property must be identified in the complaint."  *Stanton v. Couturier*, No. 2:05-cv-02046-RRB-KJM, 2007 WL 4570699, at *3 (E.D. Cal. Dec. 26, 2007); *see also Chesemore v. All. Holdings, Inc.*, 770 F. Supp. 2d 950, 979

---

[2]  The Ninth Circuit has explained the "lowest intermediate balance" theory as follows:

> Where a wrongdoer mingles another's money with his own, from which commingled account withdrawals are from time to time made, there is a presumption of law that the sums first withdrawn were moneys of the tortfeasor.  If the amount on deposit is depleted below the amount of the trust, however, the amount withdrawn is treated as lost, and subsequent deposits do not replenish the trust.  Thus, the beneficiary is entitled to the lowest intermediate balance between the date of the commingling and the date of payment.

*In re R & T Roofing Structures & Commercial Framing, Inc.*, 887 F.2d 981, 987 (9th Cir. 1989).

(W.D. Wis. 2011) ("At this early stage, plaintiffs cannot be expected to identify a specific account in which the funds are held or string of transactions that show that the proceeds can be traced."). Imposing such a requirement at the pleading stage would, in plaintiff's view, require him "to engage in a significant degree of pre-filing investigation and obtain information peculiarly in the possession of the defendant that is normally part of the discovery process in civil actions." *Stanton*, 2007 WL 4570699, at *3. Be that as it may, this court is bound by *Depot*, and plaintiff has not persuasively argued that it may be meaningfully distinguished from this case. Just as the Ninth Circuit affirmed dismissal in that case due to the plaintiffs' failure to allege the location of the funds or property, so too must this court dismiss this cause of action in this case against the selling shareholders. However, plaintiff will be granted leave to amend.[3]

Separately, defendants argue that plaintiff's first cause of action must be dismissed against defendant GreatBanc because the transaction in question was "made for adequate consideration." (Doc. No. 17-1 at 11.) This constitutes an affirmative defense that, according to defendants, bars the claim as against GreatBanc.

Title 29 U.S.C. § 1108(e)(1) provides an affirmative defense to liability under § 1106 if the "acquisition, sale, or lease is for adequate consideration[.]" The burden of proving such an affirmative defense, of course, rests with the defendant. *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) ("A fiduciary who engages in a self-dealing transaction pursuant to 29 U.S.C. § 1108(e) has the burden of proving that he fulfilled his duties of care and loyalty and that the ESOP received adequate consideration. This burden is a heavy one."); *see also Solis v. Webb*,

---

[3] While the court concludes that the complaint must contain some allegation that the money or property sought is in the possession of defendants, the court does not read the decision in *Depot* as imposing a requirement that such allegations be pleaded with specificity. Rather, the court agrees with plaintiff that the identity of a specific fund, whether particular assets were commingled in a general account, and whether defendants' account balances remained above a specific dollar amount, is information likely to be unavailable to plaintiff in the absence of discovery. So long as plaintiff has a good faith basis for his allegations, such facts need be alleged only generally. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."), *cert. denied*, ___ U.S. ___, 138 S. Ct. 642 (2018).

931 F. Supp. 2d 936, 947 (N.D. Cal. 2012) (same). Defendants are correct that a court may nonetheless dismiss a cause of action under § 1106 where the affirmative defense of adequate consideration "is clearly indicated and appears on the face of the pleading." *Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2015), *rev'd on other grounds*, ___ U.S. ___, 136 S. Ct. 758 (2016). Here, however, no allegations appear within the complaint affirmatively demonstrating that defendant GreatBanc paid adequate consideration. To the contrary, the complaint alleges that "the ESOP paid more than fair market value," and that the transaction price "was based on unrealistic management projections and did not adequately reflect the future revenue and earnings given the recurring monensin contamination in Western Milling's animal feed." (Compl. at ¶¶ 44–45.) Whether these allegations are true will, presumably, be resolved during this litigation. At present, however, the court finds nothing on the face of the complaint establishing that the consideration paid in the transaction at issue was adequate. Defendants' motion to dismiss the first cause of action as to defendant GreatBanc will therefore be denied.

2.      Second Cause of Action

Plaintiff's second cause of action, alleged under 29 U.S.C. § 1106(b), is brought against all Board defendants who sold Kruse-Western stock to the ESOP. As with the first cause of action, it also alleges a prohibited transaction in violation of ERISA. Title 29 U.S.C. § 1106(b) contains various prohibitions on transactions between a plan and a fiduciary of that plan, and the parties agree that a cause of action alleging a violation of that provision must allege that the defendants are themselves fiduciaries. They disagree, however, as to whether the allegations in the complaint plausibly allege that the Board defendants are fiduciaries here.

There are two types of fiduciaries under ERISA. *See Depot*, 915 F.3d at 653. First, a party is considered a "named fiduciary" if they are designated as such "in the plan instrument." 29 U.S.C. § 1102(a)(2); *Depot*, 915 F.3d at 653. There appears to be no contention that the Board defendants were named as fiduciaries in the ESOP, making this provision inapplicable here. That leaves the second type of fiduciary, commonly referred to as a "functional fiduciary." *Depot*, 915 F.3d at 653. ERISA defines a functional fiduciary as follows:

/////

11

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Of particular relevance to this case, the Ninth Circuit has recognized that under this definition of a fiduciary, "where members of an employer's board of directors have responsibility for the appointment and removal of ERISA trustees, those directors are themselves subject to ERISA fiduciary duties, albeit only with respect to trustee selection and retention." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009). Thus, where a board member is not a "named fiduciary," that board member's fiduciary duties under ERISA are limited.

The complaint alleges that the Board defendants appointed GreatBanc to act as trustee of the ESOP in 2015. (Compl. at ¶ 17.) Thus, the Board defendants are subject to ERISA fiduciary duties insofar as those duties related to the appointment of GreatBanc. *See Johnson*, 572 F.3d at 1076 n.8 (noting that where the board is responsible for the selection of plan fiduciaries, members of the board are "fiduciaries with respect to the plan. However, their responsibility, and, consequently, their liability, is limited to the selection and retention of fiduciaries"). However, the second cause of action is unrelated to the appointment of GreatBanc as trustee. (*See* Compl. at ¶¶ 41–49.) Rather, that cause of action relates to the sale of Kruse-Western's stock, contending that because the Board defendants were fiduciaries of the ESOP, any transaction between the ESOP and themselves effectively amounted to self-dealing in violation of ERISA. (*Id.*) Such an allegation is not cognizable under § 1106(b) unless the complaint plausibly alleges that the Board defendants exercised control over the ESOP and caused it to buy the Kruse-Western stock.

Plaintiff's opposition attempts to fill in the gaps. Specifically, plaintiff argues that because the Board defendants had the power to appoint and remove GreatBanc, they "were able to orchestrate the purchase of their Company for more than fair market value." (Doc. No. 23 at 27.) Of course, in determining whether a complaint contains sufficient allegations to survive a

1  motion to dismiss under Rule 12(b)(6), "a court *may not* look beyond the complaint to a

2  plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

3  dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Moreover,

4  even if the court were to consider such material, the allegation that the Board defendants

5  "orchestrated" the purchase of Kruse-Western stock is conclusory, and therefore not entitled to

6  the presumption of truth.  Such language gives the reader no indication of what it is the Board

7  defendants did that caused the transaction to occur.  As it currently stands, the complaint contains

8  insufficient factual allegations to state a claim against the Board defendants for violation of 29

9  U.S.C. § 1106(b).

10  A recent district court case relied on by plaintiff does not alter this conclusion.  *See Acosta*

11  *v. Saakvitne*, 355 F. Supp. 3d 908, 913 (D. Haw. 2019).  In that case, the district court denied a

12  motion to dismiss claims against two board members of a company.  The complaint alleged that

13  those board members exercised discretionary authority and control over the management of the

14  ESOP, and therefore had a fiduciary duty to the ESOP with respect to its purchase of stock.  As in

15  this case, the complaint in *Saakvitne* alleged that both board members appointed the ESOP's

16  trustee.  *Id.* at 921.  However, the allegations in that case went much further.  In particular, the

17  district court took judicial notice of several documents indicating that "the Trustee can only sell

18  Company stock with the approval of the Board of Directors."  *Id.*  Thus, as contrasted with this

19  case, the board members in *Saakvitne* were responsible not merely for appointing the trustee.

20  Instead, they effectively exercised a veto power over transactions made by the ESOP.  As a result,

21  the court rejected the board members' argument that they were not ERISA fiduciaries with

22  respect to the ESOP's purchase of company stock.  *See id.* at 920.

23  Because no such allegations appear in the operative complaint in this case, plaintiff's

24  second cause of action will be dismissed with leave to amend.

25  3.  Third Cause of Action

26  Next, defendants move for dismissal of the third cause of action, which alleges that

27  defendant GreatBanc breached its fiduciary duty to the ESOP under 29 U.S.C. § 1104(a)(1)(A)

28  and (B).  Defendants contend that the complaint contains insufficient factual allegations to state a

13

claim.  (Doc. No. 17-1 at 14.)

At issue is the proper interpretation of the Supreme Court's decision in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014).  In that case, the beneficiaries of Fifth Third's ESOP brought a putative class action against various officers of the company, alleging that they knew or should have known that the company's stock was overvalued.  *Dudenhoeffer*, 573 U.S. at 413.  As a result, they argued that as participants in the ESOP, their money was being used to purchase the stock at an inflated price.  *Id.*  The court held that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances."  *Id.* at 426.  Put another way, "a fiduciary usually 'is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks traded on it that is available to him.'"  *Id.* at 427 (quoting *Summers v. State St. Bank & Tr. Co.*, 453 F.3d 404, 408 (7th Cir. 2006)).  In remanding the action, the Supreme Court noted that the lower court's decision to deny dismissal "appears to have been based on an erroneous understanding of the prudence of relying on market prices."  *Id.*

In the undersigned's view, the rule in *Dudenhoeffer* that "special circumstances" must be alleged in order to state a claim for breach of fiduciary duty arising from over- or undervaluing a stock is inapplicable here.  By its own terms, the rule in *Dudenhoeffer* applies "where a stock is publicly traded."  *Id.* at 426.  That rule, in turn, is premised upon the efficient capital markets hypothesis, which (stated very generally) holds that "market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices."  *Basic Inc. v. Levinson*, 485 U.S. 224, 247 n.24 (1988); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 272 (2014) (noting that it is uncontested that "public information generally affects stock prices"); *Coburn v. Evercore Tr. Co., N.A.*, 844 F.3d 965, 969 (D.C. Cir. 2016) (stating that *Dudenhoeffer* requires allegations of special circumstances "because a stock price on an efficient market reflects all publicly available information").  Thus, courts may safely presume that where information exists in the public domain that is material to the value of a publicly-traded company, that information has at least to some degree been

14

incorporated into the price of the stock.  To rebut that presumption, the Court in *Dudenhoeffer* required plaintiff to allege "special circumstances," which "might include something like available public information tending to suggest that the public market price did not reflect the true value of the shares." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 679 (7th Cir. 2016).  But where, as here, the stock is privately held, that logic breaks down.  There is no objective price of the stock to serve as a baseline.  Rather than the price of the stock being set by the "wisdom of the crowd," the price is simply what the buyer ultimately pays.  *See id.* ("Private stock has no 'market price,' for the obvious reason that it is not traded on any public market.").  Accordingly, the court agrees with the Seventh Circuit's holding in *Allen* that "reliance on *Dudenhoeffer* is unwarranted" where the stock is not traded on a public, liquid market.  *Id.*

As applied to this case, defendants' argument in favor of dismissal of the third cause of action must be rejected.  The complaint here alleges that the price paid by the ESOP for Kruse-Western's stock "was based on unrealistic management projections and did not adequately reflect the future revenue and earnings given the recurring monensin contamination in Western Milling's animal feed." (Compl. at ¶ 45.)  It then alleges that "[a] prudent fiduciary who had conducted a prudent investigation would have concluded that ESOP was paying more than fair market value for the Kruse-Western stock and/or the debt incurred in connection with the Transaction was excessive." (*Id.* at ¶ 48.)  These allegations are essentially indistinguishable from those in *Allen*, in which it was also alleged that "GreatBanc failed to conduct an adequate inquiry into the value of Personal–Touch's stock." *Allen*, 835 F.3d at 678.  Of course, time will tell whether this allegation is true.  Defendants will be free to argue that the amount paid was in fact an accurate reflection of the value of Kruse-Western's stock, and that they are therefore entitled to summary judgment.  Such a factual dispute, however, cannot be resolved at the motion to dismiss stage of this litigation.

4.     Fourth Cause of Action

Finally, defendants move for dismissal of the fourth cause of action, which alleges that the Board defendants violated 29 U.S.C. § 1104(a)(1)(A) and (B) by failing to monitor GreatBanc. Specifically, it contends that the Board defendants breached their duties under ERISA both by

15

failing to ensure that the ESOP paid no more than fair market value for Kruse-Western's stock, and by failing to ensure that GreatBanc took remedial action after Kruse-Western's stock lost value. (Compl. at ¶ 66.) Defendants argue that the complaint contains only conclusory allegations in support of this cause of action, because of which it must be dismissed. (Doc. No. 17-1 at 15.)

The complaint alleges that the Board defendants "failed to monitor" GreatBanc to ensure that the ESOP paid no more than fair market value for Kruse-Western stock. (Compl. at ¶ 66.) While this allegation is conclusory, the court finds additional, non-conclusory allegations in the complaint that indicate a failure to monitor. Specifically, the complaint alleges that:

> The extreme decline in the value of the Company stock owned by the ESOP following the 2015 ESOP Transaction should have caused GreatBanc as well as the Board Defendants, at a minimum, to investigate whether the ESOP had paid more than fair market value in the 2015 ESOP Transaction. To the extent that any of the Defendants had conducted such an investigation, that investigation as well as any corrective measures would have been reported in one of the Form 5500s filed with the Department of Labor. As none of the Form 5500s report any such investigation or corrective actions, none of the Defendants investigated whether fiduciary violations had occurred in the 2015 Transaction despite numerous red flags that should have raised concerns.

(Compl. at ¶ 50.) Thus, contrary to defendants' argument, the complaint does allege that defendants failed to investigate, as any such investigation would have been revealed on a Form 5500 filed with the Department of Labor. In addition, the allegation that the value of Kruse-Western's stock lost most of its value almost immediately after it was purchased by the ESOP, when combined with the allegation that GreatBanc took no remedial action following this decline in value, makes it quite plausible that the Board defendants failed to act with care, skill, prudence, or diligence in overseeing GreatBanc.

Defendants' reliance upon the decision in *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016), is unavailing. In that case, the court dismissed plaintiffs' failure to monitor claim because, as pleaded, that claim was "wholly dependent on the breaches of duty alleged" in previous causes of action, which the court had already dismissed. *Id.* at *19. There is no suggestion in this case that plaintiffs' failure to monitor claim is derivative.

In addition, the district court in *White* noted that the complaint before it was deficient because it failed to allege "some . . . signal of a problem requiring closer attention" by the fiduciaries. *Id.* at *16; *see also Perez v. WPN Corp.*, No. CV 14-1494, 2017 WL 2461452, at *15 (W.D. Pa. June 7, 2017) (distinguishing *White* on that basis). By contrast, the complaint in this case alleges that less than two months after the ESOP purchase Kruse-Western's stock, the value of that stock had fallen by almost 90%. (Compl. at ¶ 41.) In the context of a stock transaction, it would be difficult to conceive of a more glaring "problem requiring special attention" than the stock losing essentially its entire worth.

Nor does the decision in *In re Calpine Corp.*, No. C-03-1685 SBA, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005), mandate dismissal of plaintiff's fourth cause of action. As relevant here, *In re Calpine* recognized that "[t]he duty of an ERISA fiduciary to review the performance of its appointees is a limited one. Specifically, a fiduciary must review the performance of its appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards." *Id.* at *6; *see also Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 1002 (N.D. Cal. 2018) (same). The court in that case dismissed plaintiff's claim after finding that plaintiff "ha[d] not alleged any facts that support his claim that Calpine and the Director Defendants failed to periodically review the performance of the Committee members or the Employee Defendant." *In re Calpine*, 2005 WL 1431506, at *6. Those concerns are absent here. As noted already, the complaint alleges that the Board defendants utterly failed to conduct any investigation following the sale of Kruse-Western's stock. These allegations are sufficient to survive a motion to dismiss.

## CONCLUSION

For the reasons set forth above,

1. Defendants' motion to dismiss filed on April 15, 2019 (Doc. No. 17) is granted in part;

2. The first cause of action is dismissed as to the selling shareholder defendants, including defendant Kruse;

3. The second cause of action is dismissed;

4. Defendants' motion is denied in all other respects; and

5. Within twenty-one days from the date of service of this order, plaintiff is directed to either file a first amended complaint or notify the court that he intends to proceed only with the claims found cognizable in this order.

IT IS SO ORDERED.

Dated:   **July 26, 2019**

_____
UNITED STATES DISTRICT JUDGE