UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO ZAVALA,<br><br>    Plaintiff,<br><br>    v.<br><br>KRUSE-WESTERN, INC., et al.,<br><br>    Defendants. | No. 1:19-cv-00239-DAD-SKO<br><br>ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 54) |

This matter is before the court on the motion for judgment on the pleadings filed on behalf of defendant Kevin Kruse and defendants the Kruse-Western, Inc. Board of Directors and Administration Committee (collectively, "defendants") on December 6, 2019. (Doc. No. 54.) Plaintiff Armando Zavala filed his opposition brief and defendants filed their reply thereto. (Doc. Nos. 58, 61.) Pursuant to Local Rule 230(g) and the undersigned's standing order addressing the ongoing judicial emergency in the Eastern District of California, the court took this matter under submission on February 18, 2020 to be decided on the papers, without holding a hearing. For the reasons set forth below, the court will deny defendants' motion for judgment on the pleadings.[1]

---

[1] The undersigned apologizes to the parties for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. That situation, which has continued unabated for twenty-two months now, has left the undersigned presiding over approximately 1,300 civil cases and criminal matters involving 732 defendants at last count. Unfortunately, that situation sometimes results in the court not being able to issue orders in

1

# BACKGROUND

**A.   Undisputed Facts**

The following facts are taken from defendants' statement of undisputed facts, plaintiff's response to defendants' statement of undisputed facts, and defendants' reply thereto. (Doc. Nos. 54-2, 59, 61-1.) On November 4, 2015, the Western Milling Employee Stock Ownership Plan (the "ESOP" or "Plan") was formed and purchased all of the outstanding shares of Kruse Western, Inc. stock. (Doc. No. 54-2 at ¶ 1.) The ESOP was designed to be and is invested primarily in shareholder stock of Kruse Western, Inc. (*Id.* at ¶ 2.) Section 1.3 of the ESOP Plan Document ("Plan Document") provides for a trust and trustee to manage the ESOP's assets:

> Amounts contributed under the Plan are held and invested, until distributed, by the trustee (the "*Trustee*") appointed by the Company acting by its Board of Directors. The Trustee acts in accordance with the terms of a trust agreement between the Company and the Trustee, which trust agreement is known as the Western Milling Employee Stock Ownership Trust (the "*Trust*"). The Trust implements and forms a part of the Plan. The provisions of and benefits under the Plan are subject to the terms and provisions of the Trust. In the event of any conflict between the Plan and the trust agreement, the terms of the trust agreement shall control.

(Doc. Nos. 59 at ¶ 3; 61-1 at ¶ 3.) All stock purchased by the ESOP is held in its Trust, including all the outstanding shares of Kruse Western, Inc. stock it purchased when the ESOP was formed. (Doc. No. 54-2 at ¶¶ 4–5.) GreatBanc Trust is the trustee of the ESOP Trust. (*Id.* at ¶ 6.)

A Trust Agreement details the terms by which the ESOP Trust is overseen and administered. For instance, under the Trust Agreement, the Trust Fund includes "all property of every kind held by the Trustee from time to time pursuant to this Trust Agreement." (Doc. Nos. 59 at ¶ 6; 61-1 at ¶ 6.) The Trust Agreement also describes the identity of the Plan Administrator, the distribution of the responsibilities of the Plan Administrator and the Trustee, and states that "[a]ll contributions made under the Plan will be held, managed, and controlled by the Trustee acting under this Trust Agreement, which forms a part of the Plan. The administration of the

/////

---

submitted civil matters within an acceptable period of time. This situation is frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

Trust Fund shall be coordinated with the administration of the Plan." (Doc. Nos. 59 at ¶ 6; 61-1 at ¶ 6.)

Defendant Administration Committee is the Plan Administrator of the ESOP (Doc. No. 54-2 at ¶ 11), and defendant Kevin Kruse is a director of Kruse Western, Inc. (*Id.* at ¶ 10.) Kruse Western, Inc. operates four entities: Western Milling, LLC, OHK Transport LLC, OHK Logistics, LLC, and Winema Elevators, LLC. (Doc. No. 54-2 at ¶ 8.) The ESOP provides that, except for unionized employees, "Leased Employee[s]," and nonresident alien employees, all employees over the age of 21 will become a participant in the ESOP on the next January 1st or July 1st after completing a year of employment. (*Id.* at ¶ 14; Doc. Nos. 59 at ¶ 14; 61-1 at ¶ 14.)

Plaintiff was hired by the Western Milling family of companies, which includes Western Milling, LLC and OHK Logistics, LLC (collectively, "Western Milling") on December 8, 2015 and resigned on or about May 18, 2018. (Doc. No. 54-2 at ¶¶ 13, 16.) Upon resignation from his position as a Truck Loading and Transfer 1, plaintiff was offered a severance payment of $2,500 and a severance agreement that provided in exchange for execution of the agreement, Western Milling would not contest unemployment benefits and would provide a neutral reference. (Doc. No. 59 at ¶¶ 17, 22.) Plaintiff signed the offered severance agreement on May 18, 2018 and received $2,500 as a severance payment. (*Id.* at ¶¶ 21, 23; Doc. No. 59 at ¶ 23.)

Section 2 of the severance agreement is a general release clause that provides:

> a. In consideration of Employee's agreement hereunder, including, but not limited to, the Severance Payment offered by Employer to Employee hereunder, Employee . . . hereby releases and forever discharges Employer, its subsidiaries and affiliates, and their respective present, former, and future officers, directors, employees, stockholders, attorneys, insurers, and agents, and their respective heirs, executors, administrators, successors and assigns (collectively, "the Releasees") from any and all claims, demands, causes of action, obligations and liabilities whatsoever, whether or not presently known or unknown, or fixed or contingent . . . including, but not limited to, claims, demands or causes of action under . . . Employee Retirement Income Security Act . . .

/////

/////

/////

3

> b. (i) The foregoing release is a general release of claims, demands, causes of action, obligation, damages, and liabilities of any nature whatsoever, and is intended to encompass all known and unknown, foreseen and unforeseen claims which he may have against the Releasees, or any of them, as of the moment he signs this Agreement, except for those claims which may arise out of the terms of this Agreement.

(Doc. No. 54-2 at ¶¶ 26, 27.)

In addition, paragraph 19 of the severance agreement provides:

> 19. Voluntary Execution of Agreement. Employee understands and agrees that he executed this Agreement voluntarily, without any duress or undue influence on the part or behalf of Employer or any third party, with the full intent of releasing all of his claims against Employer and any of the other Releasees. Employee acknowledges that: (a) he has read this Severance Agreement; (b) he has been represented in the preparation, negotiation, and execution of this Severance Agreement by legal counsel of his own choice or has voluntarily elected not to retain legal counsel; (c) he understands the terms and consequences of this Severance Agreement and of the releases it contains; and (d) he is fully aware of the legal and binding effect of this Severance Agreement.

(*Id.* at ¶ 28.)

**B.     Disputed Facts**

Defendants also allege the following facts that plaintiff asserts he cannot admit or deny without conducting discovery in this action: (1) Kruse Western, Inc. is the sole manager of Western Milling, LLC, and Western Milling, LLC is the sole manger of OHK Transport, LLC, OHK Logistics, LLC, and Winema Elevators, LLC (Doc. No. 54-2 at ¶ 9); (2) defendant Administration Committee administers the ESOP according to the terms of the Plan Document, which states that "[t]he Plan is administered by an Administrator appointed by the Company, which shall consist of one or more individuals (who may but need not be Employees of the Employers) to conduct Plan Administrative functions" (Doc. Nos. 59 at ¶ 12; 61-1 at ¶ 12); (3) plaintiff became a participant in the ESOP on January 1, 2017 (Doc. No. 59 at ¶ 15); and (4) the $2500 severance payment offered to plaintiff equaled approximately four weeks of plaintiff's salary with Western Milling (*Id.* at ¶ 18).

Defendants allege that the severance agreement was presented to and discussed with plaintiff during his exit interview on May 18, 2018, and that plaintiff was not told he had to sign

4

the severance agreement on that same day. (Doc. No. 54-2 at ¶¶ 19, 20.) Plaintiff disputes that the severance agreement was discussed "in any detail with him during the exit interview." (Doc. No. 59 at ¶ 19.) Plaintiff contends that a human resources representative attended his exit interview with a stack of documents she described as "standard" and directed him to sign the documents in several places. (*Id.*) Plaintiff contends he understood he would not receive the offered severance payment if he did not sign the documents, but was not otherwise told what he was signing. (*Id.*) Plaintiff contends that when he signed the paperwork presented to him at the exit interview, including the severance agreement, he believed that his signing was a necessary part of the exit interview process and he was not informed he could take the documents home or otherwise review them before signing. (*Id.* at ¶ 20.) Plaintiff also contends that he was not aware he could apply for unemployment benefits and did not apply for such benefits. (*Id.* at ¶ 23.)

**C.     Procedural Background**

On February 19, 2019, plaintiff filed this action against defendants Kruse-Western, Inc., Kevin Kruse, GreatBanc Trust Company, and Does 1 through 30, inclusive. (Doc. No. 1.) On July 26, 2019, following briefing and oral argument by the parties, this court issued an order granting in part defendants' prior motion to dismiss filed on April 15, 2019. (Doc. Nos. 17, 31.) Pursuant to that order, this court dismissed plaintiff's first cause of action as to the selling shareholder defendants, including defendant Kruse, and dismissed plaintiff's second cause of action in its entirety. (Doc. No. 31 at 17–18.)

On August 16, 2019, plaintiff filed his FAC, in which he added the Kruse-Western Board of Directors and the Administration Committee as defendants, and removed Kruse-Western, Inc. as a defendant. (*See* Doc. No. 34 at ¶¶ 13–16, 21–24.) In his FAC, plaintiff asserts five claims against defendants under the Employee Retirement Income Security Act ("ERISA") related to the defendants' alleged management and administration of the Western Milling Employee Stock Ownership Plan (the "ESOP"). (*Id.* at 17–25.) Count one alleges a violation of 29 U.S.C. § 1106(a) against the selling shareholders defendants, defendant Kruse, and defendant GreatBanc, alleging that they engaged in a transaction prohibited by ERISA. (*Id.* at ¶¶ 98–109.) Count two alleges a violation of 29 U.S.C. § 1106(b) against the Administration Committee defendants who

Case 1:19-cv-00239-DAD-SKO   Document 70   Filed 12/13/21   Page 6 of 19

sold Kruse-Western stock to the ESOP, and in which plaintiff also contends that these individuals engaged in a transaction prohibited by ERISA. (*Id.* at ¶¶ 110–20.) In count three plaintiff alleges that defendant GreatBanc violated 29 U.S.C. § 1104(a)(1)(A) and (B) by breaching its fiduciary duties to the ESOP. (*Id.* at ¶¶ 121–131.) Count four alleges that the Board defendants and defendant Kruse violated 29 U.S.C. § 1104(a)(1)(A) and (B) by failing to monitor GreatBanc and ensure that the ESOP paid no more than fair market value for the Kruse-Western stock. (*Id.* at ¶¶ 132–38.) Count five alleges a claim for co-fiduciary liability in violation of 29 U.S.C. §§ 1105(a)(1), (a)(3) against defendants Kruse, the Administration Committee, the Board of Directors, and the selling shareholders. (*Id.* at ¶¶ 139–57.)

On August 30, 2019, defendant Kruse moved to dismiss plaintiff's FAC as to the three claims brought against him. (Doc. No. 38.) On September 24, 2019, the Board defendants and the Administration Committee moved to dismiss counts two and five of the FAC. (Doc. No. 46.) Plaintiff filed an opposition to both motions on October 15, 2019, and defendants filed a joint reply thereto on October 22, 2019. (Doc. Nos. 49, 50.) On October 29, 2019, plaintiff filed a request for the court to consider a surreply or, in the alternative, to strike arguments defendants raised for the first time in their reply brief, and attached the surreply to the request. (Doc. Nos. 51, 51-1.) On the same day this order is being issued, defendants' motions to dismiss (Doc. Nos. 38, 46) were granted in part and denied in part. (Doc. No. 69.)

Below the court will first set out the applicable legal standards applicable to the pending motion and then turn to address the parties' arguments.

## LEGAL STANDARD

**A.      Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure provides that: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings. . . ." *Morgan v. County of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. 2006), *aff'd*, 277 F. App'x 734 (9th Cir. 2008). In reviewing a motion brought under Rule 12(c), the

/////

6

court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

The same legal standard applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, "judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also Fleming*, 581 F.3d at 925) (stating that "judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law"). The allegations of the complaint must be accepted as true, while any allegations made by the moving party that contradict the allegations of the complaint are assumed to be false. *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990) ("[T]he allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."). The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party. *See Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005). When deciding a motion for judgment on the pleadings, courts may consider facts set forth in the pleadings as well as facts that are contained in materials of which the court may take judicial notice. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (citation omitted); *see also Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (a Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts"). Under Federal Rule of Civil Procedure 10(c), a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes and may be considered on a motion for judgment on the pleadings. *See Qwest Commc'ns Corp. v.*

/////

*City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002) ("materials properly attached to a complaint as exhibits may be considered" on a motion for judgment on the pleadings).

Courts have discretion both to grant a motion for judgment on the pleadings with leave to amend or to simply grant dismissal of causes of action rather than grant judgment as to them. *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted); *see also Pac. W. Grp. v. Real Time Sols., Inc.*, 321 Fed. App'x 566, 569 (9th Cir. 2008);[2] *Woodson v. State of California*, No. 2:15-cv-01206-MCE-CKD, 2016 WL 524870, at *2 (E.D. Cal. Feb. 10, 2016). Generally, of course, dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (noting that "[l]eave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility").

**B.     Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On summary judgment, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). Finally, to demonstrate a genuine issue as to a disputed issue of material fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the

material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## REQUEST FOR JUDICIAL NOTICE

In connection with their motion for judgment on the pleadings, or alternatively, motion for summary judgment, defendants request that the court take judicial notice of: (1) the First Amended Complaint filed in this matter; (2) the Board defendants' Answer to the First Amended Complaint; (3) defendant Kruse's Answer to the First Amended Complaint; and (4) defendant GreatBanc's Answer to the First Amended Complaint. (Doc. No. 54-3 at 2.)

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may also take judicial notice of undisputed "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). A court may take judicial notice of a public record not for the truth of the facts recited therein, but for the existence of the document. *Id.* at 690. Courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Cal. Sportfishing Prot. Alliance v. Shiloh Grp.*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017).

It is unclear to the court why defendants seek judicial notice to be taken of the documents identified above. Those documents are all part of the record of this action and need not be judicially noticed for this court to consider them in evaluating defendants' motion for judgment on the pleadings. To the extent defendants seek to have the court take judicial notice of the exhibits attached to defendants' answers, including the Trust Agreement and the severance agreement, the court is only able to take judicial notice of the existence of the documents, and not the truth of any facts asserted therein. *See Cal. Sportfishing Prot. Alliance*, 268 F. Supp. 3d at 1038. Finding no reason to take judicial notice of documents appearing on the docket in this action, the court will deny defendants' request for judicial notice, but will consider the documents

identified above as part of the record before the court in considering defendants' converted motion for summary judgment below.

## ANALYSIS

**A.     Motion for Judgment on the Pleadings**

Defendants move for judgment on the pleadings, or alternatively for summary judgment, on the basis that plaintiff knowingly and voluntarily released the claims brought in this action against each of the defendants, and that plaintiff cannot otherwise bring the claims on behalf of the ESOP. (Doc. No. 54-1 at 9.) Defendants argue that the "unambiguous plain language of the Release" in the severance agreement, including an acknowledgement of the release immediately above plaintiff's signature, and the severance payment equal to one month's salary that plaintiff received "support[] the conclusion that, based on the totality of the circumstances, the Release was knowing and voluntary." (*Id.* at 9–12) (citing *Morais v. Cen. Beverage Corp. Union Employees' Supplemental Retirement Plan*, 167 F.3d 709, 713 (1st Cir. 1999)). Defendants also assert that plaintiff knowingly and voluntarily released his claims and "had the power to negotiate the agreement" because plaintiff requested that Western Milling issue him another check equal to the amount of taxes withheld from his original severance paycheck. (*Id.* at 12.) Defendants contend that each of the named defendants are covered by the release of claims incorporated into plaintiff's severance agreement as stockholders or administrators of a stockholder of Kruse Western stock, directors of Kruse Western, Inc., and agents of the ESOP as an affiliate of Western Milling LLC. (*Id.* at 12–15.) Defendants contend that plaintiff's claims are barred by the severance agreement because the release of claims specifically includes "any and all claims . . . under . . . Employee Retirement Income Security Act [('ERISA')]" and each of plaintiff's claims in this action are brought under ERISA. (*Id.* at 15.) Defendants distinguishes this action from the situation presented in *Bowles v. Reade*, 198 F.3d 752 (9th Cir. 1999), in which the Ninth Circuit held that an individual plaintiff cannot release claims of an ERISA plan to recover losses to the plan under ERISA § 502(a)(2) without the plan's consent. Specifically, defendants contend that they argue only that plaintiff is not entitled to pursue § 502(a)(2) claims on behalf of the ESOP, and do not argue that the ESOP cannot pursue such claims. (*Id.* at 15–16); *see* ERISA

§ 502(a)(2), 29 U.S.C. § 1132(a)(2). Finally, defendants argue that plaintiff "is not a proper person to bring a claim 'on behalf of' the Plan" because "losses as a result of any breach of fiduciary duty or overpaying for company stock are incurred at the time of the transaction in question" and plaintiff did not become a participant in the ESOP until January 1, 2017, more than a year after the ESOP's purchase of Kruse Western stock at allegedly inflated prices. (*Id.* at 16–17.)

In his opposition, plaintiff argues that defendants' motion for judgment on the pleadings is procedurally improper because it was filed while motions to dismiss (Doc. Nos. 38, 46) remained pending before the court and at a time when the defendant Administration Committee had not yet filed an answer. (Doc. No. 58 at 11.) Plaintiff also contends that the documents upon which defendants' motion relies, including the Trust Agreement and plaintiff's alleged release of claims within the severance agreement, may not be considered in connection with a motion for judgment on the pleadings because courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed, as they are here. (*Id*. at 12–13.) Plaintiff also points out that defendants' motion relies heavily on the declaration of Julie Landers Krueger ("Krueger Declaration"), Director of People Operations for Western Milling since September of 2017 (Doc. No. 54-4), filed in conjunction with the pending motion, which cannot be properly considered for a motion for judgment on the pleadings. (*Id*. at 13.)

In reply, defendants contend that the pending motion is procedurally proper because the court in its discretion may decide a motion for judgment on the pleadings before defendant Administration files an answer, and that the court can also sever defendant Administration Committee from the pending motion. (Doc. No. 61 at 15) (citing *Watson v. County of Santa Clara*, 06-cv-04029-RMW, 2007 WL 2043852, at *1 (N.D. Cal. July 12, 2007). Defendants also argue that the Trust Agreement and severance agreement may be considered in addressing the motion for judgment on the pleadings because the FAC "necessarily relies" on those documents to the extent the Trust Agreement "implements and forms part of the Plan" and governs in the "event of a conflict" and the release of claims in the severance agreement "must also be considered for the Court to understand the full contractual relationship of the parties." (*Id.* at 16–

17.) Defendants additionally assert that even if the court were to conclude that it cannot consider the documents on a motion for judgment on the pleadings, it may convert the pending motion to a motion for summary judgment and properly consider the documents. (*Id.* at 17.)

The court concludes that the Trust Agreement, severance agreement, and Krueger declaration cannot be considered in ruling on defendants' pending motion for judgment on the pleadings. Although a court may consider judicially noticed documents when analyzing such a motion, as discussed above, it may not take judicial notice of the contents of the documents for the truth of the matters asserted when the facts are disputed, as they are here. *See Cal. Sportfishing Prot. Alliance*, 268 F. Supp. 3d at 1038. As explained above, for this reason the court has declined to take judicial notice of the Trust Agreement and the severance agreement. The court is unpersuaded by defendants' argument that in his FAC plaintiff necessarily relies upon the Trust Agreement by alleging the existence of the ESOP. Defendants have cited no authority in support of their conclusory contention that the severance agreement signed by plaintiff, which is not referenced in the FAC and is a completely separate document than the documents governing the ESOP, may be considered on a motion for judgment on the pleadings. Additionally, defendants have advanced no argument that the Krueger Declaration, which contains detailed factual allegations, may be considered either as "facts set forth in the pleadings [or] facts that are contained in materials of which the court may take judicial notice" for purposes of ruling on their motion for judgment on the pleadings. *See Heliotrope Gen., Inc.*, 189 F.3d at 981 n.18. For purposes of judicial efficiency, the court will therefore convert defendants' pending motion into a motion for summary judgment and address the merits of the defendants' arguments below.

**B.     Motion for Summary Judgment**

In his opposition to the pending motion, plaintiff contends that his claims are brought on behalf of the ESOP seeking to restore losses to the ESOP as a whole under ERISA §§ 502(a)(2)–(3), and that he cannot have released those claims without the ESOP's consent. (Doc. No. 58 at 7) (citing *Bowles*, 198 F.3d at 759–60); *see* 29 U.S.C. §§ 1132(a)(2)–(3). Plaintiff argues that all of his claims, including his claims under § 502(a)(3), are brought on behalf of the ESOP and all

of its participants because he seeks plan-wide equitable relief. (Doc. No. 58 at 7.) Plaintiff maintains that his plan-wide claims are based upon the alleged fiduciary breaches that improperly benefited defendants but did not cause losses to the ESOP, and are therefore not redressable under § 502(a)(2). (*Id.* at 8 n. 2.) In support of this argument, plaintiff notes that an ERISA plan is not itself statutorily authorized to sue under ERISA § 502(a)(2) and he cites a number of post-*Bowles* decisions in which courts have declined to bar claims brought on behalf of all participants in an ERISA plan where the individual plaintiff signed a release of claims and neither the plan itself nor its fiduciaries were plaintiffs in the litigation. (*Id.* at 8.)

Additionally, plaintiff argues that even if he became a participant in the ESOP after the ESOP's purchase of Kruse-Western stock, he "still suffered a concrete loss that is redressable in this lawsuit because the value and number of the shares in his ESOP account were and are affected by the ESOP's payment of more than fair market value for the stock purchased in 2015." (*Id.* at 9–10.) Plaintiff asserts that "the loan for this Transaction was inflated by the amount of overpayment, thereby reducing the number of shares allocated to ESOP participants each year." (*Id.* at 10.) Plaintiff supports his assertion in this regard by pointing out that the ESOP Plan Document notes that ESOP borrowed funds for its purchase of the Kruse-Western stock, shares are allocated to ESOP participants annually when the ESOP makes loan payments, and the number of shares released to participants is based on the amount of the transaction loan. (*Id.*) Plaintiff asserts that he suffered an injury in fact because he would have been allocated more shares if the ESOP had paid less for the stock than the allegedly greatly inflated value. (*Id.* at 10–11.)

In reply, defendants do not dispute that ERISA § 502(a)(2) authorizes suit by an ERISA plan participant for appropriate relief under § 409, including claims to restore any losses to the plan from a breach of fiduciary duty. Instead, defendants contend that plaintiff must himself have suffered an injury in order to bring suit under ERISA § 502(a)(2). (Doc. No. 61 at 6, n. 1) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n. 6 (2016)). According to defendants, plaintiff suffered no redressable injury because he resolved any claims he might have by signing the severance agreement and its release of claims in exchange for a severance payment. (*Id.*)

14

More specifically, defendants dispute plaintiff's contention that he would have received a greater aggregate value in his individual ESOP account if he had in fact received more Kruse-Western shares pursuant to an allegedly more accurate valuation of the stock. (*Id.* at 6–7.) Defendants rely on the decision in *Dorman v. Charles Schwab Corp.,* 780 F. App'x 510 (9th Cir. 2019) to argue that plaintiff's standing turns on his individual injury because § 502(a)(2) claims are "inherently individualized when brought in the context of a defined contribution plan" like the ESOP. *Id.* at 514 (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008)). Defendants also seek to distinguish this action from that at issue in *Bowles* by clarifying that they seek to bar only this suit brought by plaintiff on behalf of the ESOP, not *any* suit asserting such claims on behalf of the ESOP. (*Id.* at 7); *see Bowles*, 198 F.3d at 756–57, 761.

In *Bowles*, a retired plan participant, brought various claims, including breach of fiduciary duty seeking relief under ERISA § 502(a)(3), against her employer, its retirement plan and individuals who were trustees of the plan. *Bowles*, 198 F.3d at 756. Two years after the plaintiff's first complaint was filed, the participant signed a settlement agreement with the representative of the estate of one of the individual defendants and sought to dismiss all of her claims against that defendant. *Id.* The district court dismissed "all claims against [that individual defendant] belonging to Bowles" but found that "the agreement released 'only those claims legally brought by Plaintiff Bowles and that Bowles [could not] and did not release the Plans' claims against [the individual defendant].'" *Id.* at 757. The Ninth Circuit affirmed, holding that the participant could not settle her claim for breach of fiduciary duty without the ERISA plan's consent to release its § 502(a)(2) claims, because her claims "are not truly individual" since the remedy she sought under § 502(a)(3) was "the precise remedy Congress prescribed in § 502(a)(2): a return to The Plans and all participants of all losses incurred and any profits gained from the alleged breach of fiduciary duty." *Id.* at 760. In addition, the Ninth Circuit affirmed the district court's decision that Bowles "remained as a plaintiff in her representative capacity on behalf of The Plans and the participants notwithstanding the release of her individual claims against [the individual defendant]." *Id.* at 761.

/////

Defendants' arguments that plaintiff released the claims at issue in this action and their attempts to distinguish *Bowles* by relying on the decision in *Dorman* are unpersuasive. In *Dorman*, the Ninth Circuit held that a former employee's ERISA claims were subject to arbitration under the plan document's arbitration provision because both the plan "expressly agreed in the Plan document that all ERISA claims should be arbitrated" and the plaintiff had agreed to arbitration on an individualized basis. But the Ninth Circuit in *Dorman* limited the arbitration to "individual claims . . . seeking relief for the impaired value of the plan assets in the individual's own account resulting from the alleged fiduciary breaches." *Dorman*, 780 F. App'x at 513–14. In this way, the decision in *Dorman* clarifies that while a plan participant "*can* bring a § 502(a)(2) claim for the plan losses in her own individual account," the threshold question in considering whether a plaintiff is bound to arbitrate such individual claims "is whether *the Plan* agreed to arbitrate the § 502(a)(2) claims" because "such claims belong to a plan—not an individual." *Id.* at 513–14 (emphasis added) (citing *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092 (9th Cir. 2018)).

Here, unlike in *Dorman*, even if plaintiff's release of claims were found to be valid, defendants do not point to any evidence demonstrating that the ESOP released any of its § 502(a)(2) claims. Furthermore, just like the plaintiff in *Bowles*, plaintiff's § 502(a)(3) claim seeks a return to the ESOP and all ESOP participants of all losses incurred and any profits gained by defendants from the alleged breaches of fiduciary duty, such that plaintiff's "claims for breach of fiduciary duty are not . . . individual" claims that plaintiff may release. (Doc. No. 34 at 26–27); *see Bowles*, 198 F.3d at 760. According to binding Ninth Circuit precedent, plaintiff's § 502(a)(2) and § 502(a)(3) claims therefore seek relief on behalf of the ESOP and "are not truly individual," and plaintiff "could not settle them [by virtue of a release of claims] without [t]he Plan['s] consent." *Bowles*, 198 F.3d at 759–60 (finding that § 502(a)(3) claims seeking relief for an ERISA plan and all plan participants seeking a return to the plan and all participants "of all losses incurred and any profits gained from the alleged breach of fiduciary duty" and § 502(a)(2) claims are not individual claims and cannot be released without the plan's consent). As such, the claims brought in this action are not barred by plaintiff's individually signed release of claims

16

because there is no evidence establishing that the ESOP consented to the release of its claims under ERISA § 502(a)(2).³ *See, e.g., Munro*, 896 F.3d at 1092 (affirming the district court's ruling that an individual employee's consent to arbitrate ERISA claims does not bar § 502(a)(2) claims filed by that employee on behalf of the ERISA plan because the plan did not also consent to arbitration); *Johnson v. Couturier*, No. 2:05-cv-02046-RRB-KJM, 2006 WL 2943160, at *2 (E.D. Cal. Oct. 13, 2006) (holding that a plaintiff could waive his individual claims against defendants but not claims brought under § 502(a)(2) for the benefit of the ERISA plan without the consent of the plan); *Cryer v. Franklin Templeton Res., Inc.*, No. 16-cv-04265-CW, 2017 WL 818788, at *3 (N.D. Cal. Jan. 17, 2017) (same); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-cv-04743-WWS, 2006 WL 2597995, at *1–2 (N.D. Cal. Sept. 11, 2006) (same).

Defendants' argument that plaintiff lacks standing to bring an action under §§ 502(a)(2)–(3) are similarly unavailing. Although the Supreme Court in *Spokeo* stated that "even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong,'" plaintiff filed this action on behalf of the ESOP under ERISA § 502(a), not as a class action. *Spokeo, Inc.*, 578 U.S. at 338 n. 6. The Ninth Circuit in *Bowles* specifically held that a plaintiff may remain "as a plaintiff in her representative capacity on behalf of [the ERISA plan] and the participants notwithstanding the release of her individual claims against [the individual defendant]." *Bowles*, 198 F.3d at 761. According to defendant, and plaintiff does not seriously dispute, plaintiff became an ESOP participant on January 1, 2017, and that the ESOP's purchase of all Kruse-Western stock at an allegedly greatly inflated value, the act which underlies plaintiffs' claims for breaches of fiduciary duties, occurred in 2015. Instructive under these circumstances is the decision in *Johnson*, where another judge of this district court considered whether a former employee had standing to bring suit under ERISA § 502(a)(2) when he had

---

³ Plaintiff also argues that his release of individual claims is invalid because it was not knowing and voluntary, and that even if valid, the release of claims within the severance agreement does not release defendants GreatBanc or Administration Committee. (Doc. No. 58 at 15–20.) Because the court finds that plaintiff's claims seek relief on behalf of the ESOP and the ESOP participants, and therefore he could not have released the claims brought in this action without the ESOP's consent, the court need not address these arguments advanced by plaintiff.

received a distribution of all shares of stock in the ERISA plan in which he was vested at the time of his termination. 2006 WL 2943160, at *3. The defendants in that case argued that the plaintiff lacked standing to sue for damages because he had already received all of the vested benefits owed to him under the plan. *Id.* The district court rejected that argument, holding that because the "complaint in this case seeks only equitable relief, *i.e.*, the imposition of a constructive trust," the plaintiff had standing to sue because he had "an equitably vested interest in that constructive trust held for the benefit of the [ERISA plan]." *Id.* at 3 (quoting *Amalgamated Textile Workers v. Murdock*, 861 F.2d 1406, 1419 (9th Cir.1988) (in turn holding that "for the limited purpose of granting plan participants and beneficiaries standing to sue in cases such as this one [where former employees who had received a full distribution under an ERISA Plan], ill-gotten profits held in a constructive trust for plan participants and beneficiaries may be construed as equitably vested benefits under an ERISA plan")).

Similarly, here, in the operative complaint plaintiff seeks only equitable relief including but not limited to disgorgement of ill-gotten gains, fees, and profits and the imposition of a constructive trust and/or equitable lien. (Doc. No. 34 at 26–27.) Although defendants contend that plaintiff has suffered no injury because he received all vested benefits owed to him under the plan solely based on the commencement of his participation in the ESOP in 2017, after the ESOP's purchase of the Kruse-Western stock in 2015, plaintiff has an equitably vested interest in those alleged ill-gotten profits held in a constructive trust held for the benefit of the ESOP. *See Johnson*, 2006 WL 2943160, at *3; *Amalgamated Textile Workers*, 861 F.2d at 1419. Furthermore, the losses in a breach of fiduciary claim arising from an ESOP's purchase of private company stock are determined based "not only on the purchased shares' price, but also on their value." *Henry v. U.S. Trust Co. of Cal., N.A.*, 569 F.3d 96, 100 (2d Cir. 2009). In his FAC plaintiff alleges that the ESOP purchased the Kruse Western shares for approximately $244 million in 2015, whereas the true value of those shares was $24.8 million at the end of 2016 and $27.4 million at the end of 2017. (Doc. No. 58 at ¶¶ 57, 64, 65.) Plaintiff has also come forward with evidence in the form of the ESOP's Plan Document to support his contention that if the valuation of Kruse Western's stock had not been grossly inflated in 2015, plaintiff would have

been allocated more shares of Kruse Western stock when he became an ESOP participant on January 1, 2017. (Doc. No. 58 at 10) (citing the ESOP Plan document and 26 C.F.R. § 54.4975-7(b)(8) to demonstrate that Kruse Western shares are released and allocated to participants each year when the ESOP makes loan payments using company contributions, and that the number of shares of employer stock released each year for allocation to participants' individual ESOP accounts is based on the amount of the transaction loan). Defendants do not dispute that the allocation of shares released to the ESOP participants was based on the amount of the transaction loan, and thus the allegedly inflated value ascribed to the Kruse-Western stock in 2015. If the alleged valuations prove to be accurate, plaintiff will have suffered an injury in fact by receiving fewer shares of Kruse Western stock on January 1, 2017. By receiving fewer shares than he would otherwise have been entitled to, plaintiff lost profit that he would have otherwise earned from the increased value (the value of Kruse Western stock rose from $24.8 million at the end of 2016 to $27.4 million at the end of 2017) of the additional shares plaintiff was allegedly entitled to. Therefore, plaintiff has presented evidence that he suffered an injury in fact due to defendants' alleged breaches of fiduciary duties that is redressable in this action. *See Spokeo, Inc.*, 578 U.S. at 338 (holding that standing to sue requires that the "plaintiff have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

**CONCLUSION**

For all of the reasons explained above, defendants' motion for judgment on the pleadings (Doc. No. 54), converted by the court into a motion for summary judgment, is denied.

IT IS SO ORDERED.

Dated: **December 13, 2021**

UNITED STATES DISTRICT JUDGE

19