1   Howard A. Sagaser, State Bar No. 72492
    Ian B. Wieland, State Bar No. 285721
2   David G. Litman, State Bar No. 285768
    **SAGASER, WATKINS & WIELAND, PC**
3   5260 North Palm Avenue, Suite 400
    Fresno, California 93704
4   Telephone: (559) 421-7000
    Facsimile: (559) 473-1483
5
    Lynn E. Calkins (*Pro Hac Vice*)
6   **HOLLAND & KNIGHT, LLP**
    800 17th Street N.W., Suite 1100
7   Washington, D.C. 20006
    Telephone: (202) 457-7041
8   Facsimile: (202) 955-5564
9   Chelsea Ashbrook McCarthy (*Pro Hac Vice*)
    Rachel C. Agius, State Bar No. 305934
10  **HOLLAND & KNIGHT, LLP**
    150 North Riverside Plaza, Suite 2700
11  Chicago, IL 60606
    Telephone: (312) 263-3600
12  Facsimile: (312) 578-6666
13  Attorneys for Defendants GreatBanc Trust Company, Kevin Kruse,
    The Kruse Western, Inc. Board of Directors, and The
14  Administration Committee

15                  UNITED STATES DISTRICT COURT

16                  EASTERN DISTRICT OF CALIFORNIA

17

18  ARMANDO ZAVALA, individually and on          )   CASE NO. 19-cv-00239-DAD-SKO
    behalf of all others similarly situated,     )
19                                               )
                    Plaintiff,                   )   **GREATBANC TRUST COMPANY'S**
20                                               )   **SECOND AMENDED ANSWER AND**
    v.                                           )   **AFFIRMATIVE DEFENSES TO**
21                                               )   **PLAINTIFF ARMANDO ZAVALA'S**
    GREATBANC TRUST COMPANY, KEVIN               )   **AMENDED CLASS ACTION**
22  KRUSE, THE KRUSE-WESTERN, INC.               )   **COMPLAINT**
    BOARD OF DIRECTORS, THE                      )
23  ADMINISTRATION COMMITTEE, and                )
    JOHN AND JANE DOES 1-30,                     )
24                                               )
    _____          )
25

26

27

28

---

GREATBANC'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED
COMPLAINT

Defendant GreatBanc Trust Company ("GreatBanc"), by and through its attorneys, as and for its Second Amended Answer and Affirmative Defenses to plaintiff Armando Zavala's Amended Class Action Complaint ("Amended Complaint"), herein states upon information and belief as follows:

## I. INTRODUCTION

1.      In response to the allegations contained in paragraph 1 of the Amended Complaint, GreatBanc admits that this is an action brought under ERISA but denies all remaining allegations contained in paragraph 1 of the Amended Complaint.

2.      In response to the allegations contained in paragraph 2 of the Amended Complaint, GreatBanc admits that the Western Milling ESOP is an employee stock ownership plan subject to ERISA designed to be and is invested primarily in the stock of the Company.  GreatBanc denies the remaining allegations contained in paragraph 2 of the Amended Complaint.

3.      In response to the allegations contained in paragraph 3 of the Amended Complaint, GreatBanc admits that the action stems from the creation of the ESOP in 2015 and that the ESOP Trust purchased 100% of the outstanding stock of Kruse Western, Inc. for $244,130,400, but denies all remaining allegations contained in paragraph 3 of the Amended Complaint.

4.      In response to the allegations contained in paragraph 4 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 4 of the Amended Complaint.

5.      In response to the allegations contained in paragraph 5 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 5 of the Amended Complaint.

6.      In response to the allegations contained in paragraph 6 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 6 of the Amended Complaint.

7.      In response to the allegations contained in paragraph 7 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 7 of the Amended Complaint.

8.      In response to the allegations contained in paragraph 8 of the Amended Complaint, paragraph 8 of the Amended Complaint contains a legal conclusion to which no answer is required, but to the extent an answer is required, GreatBanc denies the allegations contained in paragraph 8 of the Amended Complaint.

1

9.      In response to the allegations contained in paragraph 9 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 9 of the Amended Complaint.

10.      In response to the allegations contained in paragraph 10 of the Amended Complaint, GreatBanc admits that the Court has personal jurisdiction over it.   GreatBanc lacks knowledge sufficient to form a belief about the truth of the remaining allegations contained in paragraph 10 of the Amended Complaint.

11.      In response to the allegations contained in paragraph 11 of the Amended Complaint, GreatBanc admits that venue in this District is proper.

11.a.    In response to the allegations contained in paragraph 11(a) of the Amended Complaint, GreatBanc lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 11(a) of the Amended Complaint.

11.b.    In response to the allegations contained in paragraph 11(b) of the Amended Complaint, GreatBanc lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 11(b) of the Amended Complaint.

11.c.    In response to the allegations contained in paragraph 11(c) of the Amended Complaint, GreatBanc lacks knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 11(c) of the Amended Complaint, except denies that there were any breaches.

## II.  PARTIES

12.      In response to the allegations contained in paragraph 12 of the Amended Complaint, GreatBanc denies that Plaintiff was fully-vested in the ESOP at the time he left the Company. GreatBanc lacks knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 12 of the Amended Complaint.

13.      In response to the allegations contained in paragraph 13 of the Amended Complaint, GreatBanc admits that it is the Trustee of the Western Milling Employee Stock Ownership Trust, that it holds, manages, and controls all contributions made under the Plan acting under the ESOP Trust Agreement, and that it acted as a fiduciary to the Plan to the extent that it acted as the independent, discretionary trustee to the Plan in connection with the November 4, 2015 transaction.  GreatBanc denies the remaining allegations contained in paragraph 13 of the Amended Complaint.

14.     In response to the allegations contained in paragraph 14 of the Amended Complaint, GreatBanc admits that Kevin Kruse is a member of the board of directors of Kruse Western, Inc. and that the ESOP Plan document provides that the Board of Directors of Kruse Western, Inc. appoints the Trustee of the ESOP and the Administrator as that term is defined in the Plan.  GreatBanc answers that whether Kevin Kruse is or was a fiduciary of the ESOP or a party in interest is a legal conclusion to which no answer is required, but to the extent an answer is required, GreatBanc denies those allegations.  GreatBanc denies the remaining allegations contained in paragraph 14 of the Amended Complaint.

15.     In response to the allegations contained in paragraph 15 of the Amended Complaint, GreatBanc admits that the ESOP Plan document provides that the Board of Directors of Kruse Western, Inc. appoints the Trustee of the ESOP and the Administrator as that term is defined in the Plan.  GreatBanc answers that whether the Board of Directors is a fiduciary of the ESOP or a party in interest is a legal conclusion to which no answer is required, but to the extent an answer is required, GreatBanc denies those allegations.  GreatBanc denies the remaining allegations contained in paragraph 15 of the Amended Complaint.

16.     In response to the allegations contained in paragraph 16 of the Amended Complaint, GreatBanc lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 16 of the Amended Complaint.

17.     In response to the allegations contained in paragraph 17 of the Amended Complaint, GreatBanc admits that Plaintiff's counsel sought the names of the Board of Directors from Defendants' counsel and that Defendants' counsel declined to provide them, but GreatBanc denies any suggestion that Plaintiff's counsel is entitled to that information and denies the remaining allegations contained in paragraph 17 of the Amended Complaint.

18.     In response to the allegations contained in paragraph 18 of the Amended Complaint, GreatBanc admits that it was appointed as Trustee of the Western Milling Employee Stock Ownership Trust in 2015 by Kruse Western, Inc. after such appointment was approved and ratified by the Kruse Western, Inc. board of directors and that the Board appointed the Administrator, as that term is defined in the Plan document.  GreatBanc answers that what obligations the Board Defendants had

under ERISA is a legal conclusion to which no answer is required, but to the extent an answer is required, GreatBanc denies those allegations.  GreatBanc denies the remaining allegations contained in paragraph 18.

19.     In response to the allegations contained in paragraph 19 of the Amended Complaint, paragraph 19 of the Amended Complaint contains a legal conclusion to which no answer is required, but to the extent an answer is required, GreatBanc denies the allegations contained in paragraph 19 of the Amended Complaint.

20.     In response to the allegations contained in paragraph 20 of the Amended Complaint, GreatBanc lacks knowledge sufficient to form a belief about the truth of the allegations contained in paragraph 20 of the Amended Complaint.

21.     In response to the allegations contained in paragraph 21 of the Amended Complaint, GreatBanc admits that under the Plan document, the Administration Committee is the Plan Administrator except for purposes of the reporting and disclosure rules of ERISA as specified in the Plan document.  GreatBanc answers that whether the Administration Committee is a fiduciary of the ESOP is a legal conclusion to which no answer is required, but to the extent an answer is required, GreatBanc denies those allegations.  GreatBanc denies the remaining allegations contained in paragraph 21 of the Amended Complaint.

22.     In response to the allegations contained in paragraph 22 of the Amended Complaint, GreatBanc lacks knowledge sufficient to form a belief about the truth of the allegations contained in paragraph 22 of the Amended Complaint.

23.     In response to the allegations contained in paragraph 23 of the Amended Complaint, GreatBanc admits that Plaintiff's counsel sought the names of the Administration Committee members from Defendants' counsel and that Defendants' counsel declined to provide them, but GreatBanc denies any suggestion that Plaintiff's counsel is entitled to that information and denies the remaining allegations contained in paragraph 23 of the Amended Complaint.

24.     In response to the allegations contained in paragraph 24 of the Amended Complaint, GreatBanc lacks knowledge sufficient to form a belief about the truth of the allegations contained in

GREATBANC'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

1   paragraph 24, except denies that Kevin Kruse is a "Selling Shareholder" who sold stock in Kruse

2   Western, Inc. to the ESOP in 2015.

3          25.    In response to the allegations contained in paragraph 25 of the Amended Complaint,

4   GreatBanc admits that Plaintiff's counsel sought the names of the Selling Shareholders from

5   Defendants' counsel and that Defendants' counsel declined to provide them, but GreatBanc denies

6   any suggestion that Plaintiff's counsel is entitled to that information and denies the remaining

7   allegations contained in paragraph 25 of the Amended Complaint.

8   ### III.  FACTUAL ALLEGATIONS

9          26.    In response to the allegations contained in paragraph 26 of the Amended Complaint,

10   GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations

11   set forth in Paragraph 26 of the Amended Complaint.

12          27.    In response to the allegations contained in paragraph 27 of the Amended Complaint,

13   GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations

14   set forth in Paragraph 27 of the Amended Complaint.

15          28.    In response to the allegations contained in paragraph 28 of the Amended Complaint,

16   GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations

17   set forth in Paragraph 28 of the Amended Complaint.

18          29.    In response to the allegations contained in paragraph 29 of the Amended Complaint,

19   GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations

20   set forth in Paragraph 29 of the Amended Complaint.

21          30.    In response to the allegations contained in paragraph 30 of the Amended Complaint,

22   GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations

23   set forth in Paragraph 30 of the Amended Complaint.

24          31.    In response to the allegations contained in paragraph 31 of the Amended Complaint,

25   GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations

26   set forth in Paragraph 31 of the Amended Complaint.

27

28

GREATBANC'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED
COMPLAINT

32.     In response to the allegations contained in paragraph 32 of the Amended Complaint, GreatBanc admits that Western Milling voluntarily recalled a single lot of Western Blend horse feed manufactured on September 8, 2015, after learning that the lot may contain monensin.

33.     In response to the allegations contained in paragraph 33 of the Amended Complaint, GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 33 of the Amended Complaint.

34.     In response to the allegations contained in paragraph 34 of the Amended Complaint, GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 34 of the Amended Complaint.

35.     In response to the allegations contained in paragraph 35 of the Amended Complaint, GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 35 of the Amended Complaint.

36.     In response to the allegations contained in paragraph 36 of the Amended Complaint, GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Amended Complaint.

37.     In response to the allegations contained in paragraph 37 of the Amended Complaint, GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 of the Amended Complaint.

38.     In response to the allegations contained in paragraph 38 of the Amended Complaint, GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 of the Amended Complaint.

39.     In response to the allegations contained in paragraph 39 of the Amended Complaint, GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39 of the Amended Complaint.

40.     In response to the allegations contained in paragraph 40 of the Amended Complaint, GreatBanc lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 of the Amended Complaint.

41.     In response to the allegations contained in paragraph 41 of the Amended complaint, GreatBanc denies all allegations contained in paragraph 41 of the Amended Complaint.

**The Western Milling ESOP**

42.     In response to the allegations contained in paragraph 42 of the Amended Complaint, GreatBanc lacks knowledge sufficient to form a belief about the truth of the allegations contained in paragraph 42 of the Amended Complaint, except admits that Kruse Western, Inc. was incorporated under the laws of California on September 11, 2015.

43.     In response to the allegations contained in paragraph 43 of the Amended Complaint, GreatBanc admits the allegations contained in paragraph 43 of the Amended Complaint.

44.     In response to the allegations contained in paragraph 44 of the Amended Complaint, GreatBanc admits that the ESOP was created on November 4, 2015 and the ESOP Trust purchased 100% of the outstanding stock of Kruse Western, Inc.  GreatBanc denies the remaining allegations contained in paragraph 44 of the Amended Complaint.

45.     In response to the allegations contained in paragraph 45 of the Amended Complaint, GreatBanc admits that immediately prior to the transaction in which it caused the ESOP Trust to purchase 100% of the outstanding stock of Kruse Western, Inc., the outstanding stock of Kruse Western, Inc. was owned by the shareholders of Kruse Western, Inc. who sold their stock in Kruse Western, Inc. to the ESOP.  GreatBanc denies the remaining allegations contained in paragraph 45 of the Amended Complaint.

46.     In response to the allegations contained in paragraph 46 of the Amended Complaint, GreatBanc admits the allegations contained in paragraph 46 of the Amended Complaint.

47.     In response to the allegations contained in paragraph 47 of the Amended Complaint, GreatBanc admits that the ESOP was established and is maintained pursuant to a written instrument called the Western Milling Employee Stock Ownership Plan as provided by 29 U.S.C. § 1102. GreatBanc denies the remaining allegations contained in paragraph 47 of the Amended Complaint.

48.     In response to the allegations contained in paragraph 48 of the Amended Complaint, GreatBanc admits that Section 1.4 of the Plan document states the following:  "The Company shall be the statutory plan administrator for purposes of the reporting and disclosure rules of ERISA. For

all other purposes under the Plan, a committee appointed by the Board of Directors of the Company shall serve as Administrator (the "Administrator") as described in Section 17.1. Any notice or document required to be given to or filed with the Administrator will be properly given or filed if delivered or mailed, by registered or certified mail, postage prepaid, to the Administrator, in care of the Company at its corporate headquarters." GreatBanc denies the characterization of this provision contained in paragraph 48 of the Amended Complaint and denies the remaining allegations contained in paragraph 48 of the Amended Complaint.

49.     In response to the allegations contained in paragraph 49 of the Amended Complaint, GreatBanc denies the allegations contained in paragraph 49 of the Amended Complaint, except admits that the Plan document provides that the Trustee of the ESOP is appointed by the Company acting by its Board of Directors.

50.     In response to the allegations contained in paragraph 50 of the Amended Complaint, GreatBanc admits that paragraph 50 purports to quote a portion of Section 13(b) of the Plan document, but GreatBanc denies that paragraph 50 is a complete and accurate quotation, GreatBanc relies on the Plan document to speak for itself, and GreatBanc denies the remaining allegations contained in paragraph 50 of the Amended Complaint.

51.     In response to the allegations contained in paragraph 51 of the Amended Complaint, GreatBanc admits that paragraph 51 purports to quote a portion of Section 4.3 of the Plan document, but GreatBanc denies that paragraph 51 is a complete and accurate quotation, GreatBanc relies on the Plan document to speak for itself, and GreatBanc denies the remaining allegations contained in paragraph 51 of the Amended Complaint.

52.     In response to the allegations contained in paragraph 52 of the Amended Complaint, GreatBanc denies the characterization of Section 6.1 of the Plan document contained in paragraph 52, GreatBanc relies on the Plan document to speak for itself, and GreatBanc denies the remaining allegations contained in paragraph 52 of the Amended Complaint.

53.     In response to the allegations contained in paragraph 53 of the Amended Complaint, GreatBanc admits that paragraph 53 purports to quote a portion of Section 7.5(b) of the Plan document, but GreatBanc denies that paragraph 53 is a complete and accurate quotation, GreatBanc

8

relies on the Plan document to speak for itself, and GreatBanc denies the remaining allegations contained in paragraph 53 of the Amended Complaint.

54.   In response to the allegations contained in paragraph 54 of the Amended Complaint, GreatBanc denies the characterization of Section 17.2(h) of the Plan document, GreatBanc relies on the Plan document to speak for itself, and GreatBanc denies the remaining allegations contained in paragraph 54 of the Amended Complaint.

55.   In response to the allegations contained in paragraph 55 of the Amended Complaint, GreatBanc denies the allegations contained in paragraph 55 of the Amended Complaint.

56.   In response to the allegations contained in paragraph 56 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 56 of the Amended Complaint, except admits that members of the Administration Committee held management positions at Western Milling and/or Kruse Western.

57.   In response to the allegations contained in paragraph 57 of the Amended Complaint, GreatBanc admits the allegations contained in paragraph 57, except clarifies that it was the ESOP Trust that purchased 100% of the outstanding shares of Kruse Western, Inc. and denies the Kevin Kruse was a Selling Shareholder.

58.   In response to the allegations contained in paragraph 58 of the Amended Complaint, GreatBanc denies the allegations contained in paragraph 58 of the Amended Complaint.

59.   In response to the allegations contained in paragraph 59 of the Amended Complaint, GreatBanc denies the allegations contained in paragraph 59 of the Amended Complaint.

60.   In response to the allegations contained in paragraph 60 of the Amended Complaint, GreatBanc denies the allegations contained in paragraph 60 of the Amended Complaint.

61.   In response to the allegations contained in paragraph 61 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 61 of the Amended Complaint, except relies on 26 U.S.C. § 1042 to speak for itself.

62.   In response to the allegations contained in paragraph 62 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 62 of the Amended Complaint.

GREATBANC'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

63.     In response to the allegations contained in paragraph 63 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 63 of the Amended Complaint.

64.     In response to the allegations contained in paragraph 64 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 64 of the Amended Complaint.

65.     In response to the allegations contained in paragraph 65 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 65 of the Amended Complaint.

66.     In response to the allegations contained in paragraph 66 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 66 of the Amended Complaint.

67.     In response to the allegations contained in paragraph 67 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 67 of the Amended Complaint.

68.     In response to the allegations contained in paragraph 68 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 68 of the Amended Complaint.

69.     In response to the allegations contained in paragraph 69 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 69 of the Amended Complaint.

70.     In response to the allegations contained in paragraph 70 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 70 of the Amended Complaint.

71.     In response to the allegations contained in paragraph 71 of the Amended Complaint, GreatBanc lacks knowledge sufficient to form a belief about the truth of the allegations contained in paragraph 71 of the Amended Complaint.

72.     In response to the allegations contained in paragraph 72 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 72 of the Amended Complaint.

73.     In response to the allegations contained in paragraph 73 of the Amended Complaint, GreatBanc lacks knowledge sufficient to form a belief about the truth of the allegations contained in paragraph 73 of the Amended Complaint, except denies any allegation that the Company's projections were inflated or that the valuation of the Company was or has been inflated.

74.     In response to the allegations contained in paragraph 74 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 74 of the Amended Complaint.

GREATBANC'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

75.     In response to the allegations contained in paragraph 75 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 75 of the Amended Complaint.

76.     In response to the allegations contained in paragraph 76 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 76 of the Amended Complaint.

77.     In response to the allegations contained in paragraph 77 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 77 of the Amended Complaint.

78.     In response to the allegations contained in paragraph 78 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 78 of the Amended Complaint.

79.     In response to the allegations contained in paragraph 79 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 79 of the Amended Complaint.

80.     In response to the allegations contained in paragraph 80 of the Amended Complaint, GreatBanc admits the allegations contained in paragraph 80 of the Amended Complaint.

81.     In response to the allegations contained in paragraph 81 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 81 of the Amended Complaint.

82.     In response to the allegations contained in paragraph 82 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 82 of the Amended Complaint.

### IV.     CLASS ACTION ALLEGATIONS

83.     In response to the allegations contained in paragraph 83 of the Amended Complaint, GreatBanc admits that Plaintiff purports to bring his claims as a class action, but GreatBanc denies that Plaintiff can establish the requirements of Fed. R. Civ. P. 23 and denies the remaining allegations contained in paragraph 83 of the Amended Complaint.

84.     In response to the allegations contained in paragraph 84 of the Amended Complaint, GreatBanc denies the allegations contained in paragraph 84 of the Amended Complaint except admits that Form 5500 for the year ending December 31, 2017 identifies the number of participants with account balances as of the end of the plan year as 393.

85.     In response to the allegations contained in paragraph 85 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 85 of the Amended Complaint.

85.a.     In response to the allegations contained in paragraph 85(a) of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 85(a) of the Amended Complaint.

85.b.     In response to the allegations contained in paragraph 85(b) of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 85(b) of the Amended Complaint.

85.c.     In response to the allegations contained in paragraph 85(c) of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 85(c) of the Amended Complaint.

85.d.     In response to the allegations contained in paragraph 85(d) of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 85(d) of the Amended Complaint.

85.e.     In response to the allegations contained in paragraph 85(e) of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 85(e) of the Amended Complaint.

86.     In response to the allegations contained in paragraph 86 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 86 of the Amended Complaint.

87.     In response to the allegations contained in paragraph 87 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 87 of the Amended Complaint.

88.     In response to the allegations contained in paragraph 88 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 88 of the Amended Complaint.

89.     In response to the allegations contained in paragraph 89 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 89 of the Amended Complaint.

90.     In response to the allegations contained in paragraph 90 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 90 of the Amended Complaint.

91.     In response to the allegations contained in paragraph 91 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 91 of the Amended Complaint.

92.     In response to the allegations contained in paragraph 92 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 92 of the Amended Complaint.

93.     In response to the allegations contained in paragraph 93 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 93 of the Amended Complaint.

94.     In response to the allegations contained in paragraph 94 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 94 of the Amended Complaint.

GREATBANC'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

95.     In response to the allegations contained in paragraph 95 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 95 of the Amended Complaint.

96.     In response to the allegations contained in paragraph 96 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 96 of the Amended Complaint.

96.a.     In response to the allegations contained in paragraph 96(a) of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 96(a) of the Amended Complaint.

96.b.     In response to the allegations contained in paragraph 96(b) of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 96(b) of the Amended Complaint.

96.c.     In response to the allegations contained in paragraph 96(c) of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 96(c) of the Amended Complaint.

97.     In response to the allegations contained in paragraph 97 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 97 of the Amended Complaint.

## COUNT I

### Prohibited Transaction in Violation of ERISA § 406(a), 29 U.S.C. § 1106(a)

(Against Kevin Kruse, Does 21-30, and GreatBanc)

98.     In response to the allegations contained in paragraph 98 of the Amended Complaint, GreatBanc incorporates its answers as set forth herein as its answer to paragraph 98 of the Amended Complaint.

99.     In response to the allegations contained in paragraph 99 of the Amended Complaint, GreatBanc admits that paragraph 99 quotes portions of ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), but GreatBanc denies that paragraph 99 contains a complete or accurate quotation of ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and GreatBanc denies the remaining allegations contained in paragraph 99 of the Amended Complaint.

100.     In response to the allegations contained in paragraph 100 of the Amended Complaint, GreatBanc admits that paragraph 100 quotes portions of ERISA § 3(14), 29 U.S.C. § 1002(14), but GreatBanc denies that paragraph 100 contains a complete or accurate quotation of ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) and GreatBanc denies the remaining allegations contained in paragraph 100.

101.    In response to the allegations contained in paragraph 101 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 101 of the Amended Complaint.

102.    In response to the allegations contained in paragraph 102 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 102 of the Amended Complaint, except admits that ERISA § 408(e), 29 U.S.C. § 1108(e) states that ERISA § 406, 29 U.S.C. §1106, does not apply to the acquisition or sale by a plan of qualifying employer securities if such acquisition or sale is for adequate consideration.

103.    In response to the allegations contained in paragraph 103 of the Amended Complaint, GreatBanc admits that paragraph 103 quotes portions of ERISA § 3(18)(B), 29 U.S.C. § 1002(18)(B), but GreatBanc denies that paragraph 103 contains a complete or accurate quotation of ERISA § 3(18)(B), 29 U.S.C. § 1002(18)(B) and GreatBanc denies the remaining allegations contained in paragraph 103.

104.    In response to the allegations contained in paragraph 104 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 104 of the Amended Complaint.

105.    In response to the allegations contained in paragraph 105 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 105 of the Amended Complaint.

106.    In response to the allegations contained in paragraph 106 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 106 of the Amended Complaint.

107.    In response to the allegations contained in paragraph 107 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 107 of the Amended Complaint, except admits that the shareholders of the outstanding stock of Kruse Western, Inc. participated in the 2015 ESOP Transaction by selling their shares of Kruse Western, Inc. to the ESOP Trust.

108.    In response to the allegations contained in paragraph 108 of the Amended Complaint, GreatBanc denies allegations contained in paragraph 108 of the Amended Complaint.

109.    In response to the allegations contained in paragraph 109 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 109 of the Amended Complaint.

## COUNT II

### Prohibited Transaction in Violation of ERISA § 406(b), 29 U.S.C. § 1106(b)

(Against All Administration Committee Members Who Sold Kruse Western Stock to the ESOP)

110.–120.    In response to the allegations contained in paragraphs 110 through 120 of the Amended Complaint, GreatBanc answers that paragraphs 110 through 120 are not directed against GreatBanc; accordingly, no answer by GreatBanc is required.  To the extent an answer is required, GreatBanc denies all allegations contained in paragraphs 110 through 120 of the Amended Complaint.

## COUNT III
### Breach of Fiduciary Duties Under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B)

(Against GreatBanc)

121.    In response to the allegations contained in paragraph 121 of the Amended Complaint, GreatBanc incorporates its answers as set forth herein as its answer to paragraph 121 of the Amended Complaint.

122.    In response to the allegations contained in paragraph 122 of the Amended Complaint, GreatBanc admits that paragraph 122 quotes portions of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), but GreatBanc denies that paragraph 122 contains a complete or accurate quotation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) and GreatBanc denies the remaining allegations contained in paragraph 122.

123.    In response to the allegations contained in paragraph 123 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 123 of the Amended Complaint, except admits that ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) states in part: "Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his

15

duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."

124.   In response to the allegations contained in paragraph 124 of the Amended Complaint, GreatBanc denies the characterization of the duties of loyalty and prudence under ERISA §§ 404(a)(1)(A) and 404(a)(1)(B) contained in paragraph 124 and denies all remaining allegations contained in paragraph 124 of the Amended Complaint.

125.   In response to the allegations contained in paragraph 125 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 125 of the Amended Complaint, except admits that ERISA § 3(18), 29 U.S.C. § 1002(18) states in part:  "The term 'adequate consideration" when used in part 4 of subtitle B means . . . (B) in the case of an asset other than a security for which there is a generally recognized market, the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary."

126.   In response to the allegations contained in paragraph 126 of the Amended Complaint, GreatBanc denies the characterization of its responsibilities contained in paragraph 126, denies that it breached any fiduciary obligations, and denies the remaining allegations contained in paragraph 126 of the Amended Complaint.

127.   In response to the allegations contained in paragraph 127 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 127 of the Amended Complaint.

128.   In response to the allegations contained in paragraph 128 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 128 of the Amended Complaint.

129.   In response to the allegations contained in paragraph 129 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 129 of the Amended Complaint.

130.     In response to the allegations contained in paragraph 130 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 130 of the Amended Complaint.

131.     In response to the allegations contained in paragraph 131 of the Amended Complaint, GreatBanc denies all allegations contained in paragraph 131 of the Amended Complaint.

**COUNT IV**
**Failure to Monitor in Violation of ERISA §§ 404(a)(1)(A) and (B)**
**29 U.S.C. §§ 1104(a)(1)(A) and (B)**

(Against Kevin Kruse, the Board of Directors, and Does 1-10)

132.–138.     In response to the allegations contained in paragraphs 132 through 138 of the Amended Complaint, GreatBanc answers that paragraphs 132 through 138 are not directed against GreatBanc; accordingly, no answer by GreatBanc is required.  To the extent an answer is required, GreatBanc denies all allegations contained in paragraphs 132 through 138 of the Amended Complaint.

**COUNT V**
**Co-Fiduciary Liability Under ERISA §§ 405(a)(1) and (a)(3)**
**29 U.S.C. § 1105(a)(1) and (a)(3)**

(Against Kevin Kruse, the Administration Committee, the Board of Directors, and Does 1-20)

139.–157.     In response to the allegations contained in paragraphs 139 through 157 of the Amended Complaint, GreatBanc answers that paragraphs 139 through 157 are not directed against GreatBanc; accordingly, no answer by GreatBanc is required.  To the extent an answer is required, GreatBanc denies all allegations contained in paragraphs 139 through 157 of the Amended Complaint.

158.     GreatBanc further answers that any allegations contained in the Amended Complaint that are not expressly admitted are denied.

159.     GreatBanc further avers that all relief sought in the Amended Complaint should be denied and denies that Plaintiff is entitled to any relief.

**V.     PRAYER FOR RELIEF**

In response to the prayer for relief, including each and every subpart thereof, GreatBanc denies that judgment for plaintiff is proper or that plaintiff is entitled to any of the relief whatsoever; GreatBanc requests that judgment be entered in its favor and against plaintiff on all claims.

## GREATBANC'S AFFIRMATIVE DEFENSES

GreatBanc states the following as its affirmative defenses to the Amended Complaint.

### First Affirmative Defense

### Lack of Subject Matter Jurisdiction/Lack of Standing

1. Plaintiff was not an employee of any employer participating in the Western Milling ESOP upon its inception on November 4, 2015.

2. Plaintiff was not hired until on or about December 8, 2015.

3. Plaintiff did not become a participant in the Western Milling ESOP until January 1, 2017.

4. The Court lacks subject matter jurisdiction because Plaintiff has not personally suffered an injury in fact as a result of the conduct alleged in the Amended Complaint, including but not limited to, by reason of the facts alleged in paragraphs 1 through 3 of these affirmative defenses.

5. The Court lacks subject matter jurisdiction because absent an injury in fact to Plaintiff, he lacks standing to sue.

6. The Court lacks subject matter jurisdiction because Plaintiff has failed to identify any action by GreatBanc that poses a real and immediate threat of future personal injury.

### Second Affirmative Defense

### Waiver and Release

7. On or around May 18, 2018, Plaintiff signed a Severance Agreement containing a release ("Release"), attached hereto as **Exhibit A**.

8. In the Release, Plaintiff released the following parties:  Western Milling, LLC, "its subsidiaries and affiliates, and their respective present, former, and future officers, directors, employees, stockholders, attorneys, insurers, and agents, and their respective heirs, executors, administrators, successors, and assigns."

18

9.      The scope of the Release extends to the claims raised in this lawsuit.

10.      Kruse Western, Inc. is an affiliate of Western Milling, LLC, as its sole member.

11.      All outstanding shares in Kruse Western, Inc. are owned by the Western Milling Employee Stock Ownership Trust ("ESOP Trust").

12.      Pursuant to the Trust Agreement attached hereto as **Exhibit B**, the ESOP Trust is administered, managed, and controlled by GreatBanc, as Trustee.   Accordingly, GreatBanc is an administrator of the stockholder of Western Milling, LLC's affiliate, Kruse Western, Inc. and is a released party under the Release.

13.      Plaintiff's lawsuit is barred by the Release.

### Third Affirmative Defense

### Statute of Limitations

14.      Plaintiff's claims are barred by ERISA's statute of limitations set forth in ERISA § 413(2), which provides:   "No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part . . . three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."

15.      At or around the date of his hire around December 8, 2015, plaintiff received information about the ESOP from the Company.

16.      Plaintiff had actual knowledge of the claims he now brings as early as 2015.

### Fourth Affirmative Defense

### Exemption from Prohibited Transaction

17.      Plaintiff's claims that GreatBanc caused the ESOP to engage in a prohibited transaction in violation of ERISA § 406, 29 U.S.C. § 1106 do not apply to the November 4, 2015 stock purchase transaction in which the ESOP purchased 100% of the outstanding shares of Kruse Western, Inc. stock (the "Purchase Transaction").

18.      The Purchase Transaction satisfies the exemption set forth in ERISA § 408(e), 29 U.S.C. § 1108(e).

GREATBANC'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

19. Section 408(e) provides in pertinent part: "Sections 1106 and 1107 of this title shall not apply to the acquisition or sale by a plan of qualifying employer securities (as defined in section 1107(d)(5) of this title) . . . (1) if such acquisition, sale, or lease is for adequate consideration (or in the case of a marketable obligation . . . (2) if no commission is charged with respect thereto, and (3) if—(A) the plan is an eligible individual account plan (as defined in section 1107(d)(3) of this title)."

20. As used in Section 408(e), "adequate consideration" means "in the case of an asset other than a security for which there is a generally recognized market, the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary." *See also* Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17632-01 (May 17, 1988) (to be codified at 29 C.F.R. pt. 2510).

21. Prior to approving the Purchase Transaction, GreatBanc conducted a prudent investigation of the Company stock that was offered for sale to the ESOP.

22. GreatBanc properly determined that the price the ESOP Trust paid for the Company stock in the Purchase Transaction fell within the range of the fair market value of the stock.

## Fifth Affirmative Defense

### Lack of Intent under ERISA § 406(a)(1)(D)

23. ERISA § 406(a)(1)(D) prohibits transactions between a plan and a party in interest that constitute a direct or indirect "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

24. Courts have held that a prohibited use of plan assets for the benefit of a party in interest as described in ERISA § 406(a)(1)(D) requires a subjective intent to benefit a party in interest.

25. Plaintiff cannot establish that GreatBanc had any subjective intent to benefit any party in interest.

## Sixth Affirmative Defense

### Failure to Exhaust Administrative Remedies

26. Plaintiff's claims are barred, in whole or in part, by the failure to exhaust administrative remedies.

### Seventh Affirmative Defense

### Validity of Indemnification Agreement

27.     The indemnification provision in the Trustee Engagement Agreement does not violate ERISA Section 410(a), 29 U.S.C. § 1110(a), or 29 C.F.R. § 2509.75-4 because it does not relieve GreatBanc from "responsibility or liability for any responsibility, obligation, or duty" under part 4 of Title I of ERISA, including sections 404 and 406, 29 U.S.C. §§ 1104, 1106.

28.     ERISA § 410(a), 29 U.S.C. § 1110(a), does not preclude indemnification of, or advancement of legal fees to, a fiduciary that is merely accused of a breach.  Any claim by Plaintiff to invalidate the indemnification of GreatBanc's costs prior to final determination of GreatBanc's liability therefore fails.

### Eighth Affirmative Defense

### No Economic Loss

29.     The ESOP's purchase of stock was 100% financed by those selling their stock to the ESOP, but, within less than two months following the ESOP Transaction, the equity value of the stock was $26,600,000, which demonstrates that no overpayment occurred.

30.     As a result, Plaintiff's claims are barred, in whole or in part, because the ESOP has suffered no economic losses or damage.

### Ninth Affirmative Defense

### Unjust Enrichment/Windfall

31.     Plaintiff's claims are barred, in whole or in part, because any award to compensate for any alleged loss or damage to the ESOP would constitute unjust enrichment and/or an improper windfall, as the ESOP has not suffered any damages including but not limited to by reason of the facts alleged in paragraphs 29–30 of these defenses.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WHEREFORE**, GreatBanc respectfully requests that this Court enter judgment in its favor and against Plaintiff on all claims, award its reasonable attorneys' fees and costs, and grant such further relief as the Court deems just.

Dated:  June 29, 2022

Respectfully submitted,

**GREATBANC TRUST COMPANY**

By:   s/ Chelsea Ashbrook McCarthy
            One of their attorneys

Howard A. Sagaser
Ian B. Wieland
David G. Litman
SAGASER, WATKINS & WIELAND, PC

Lynn E. Calkins
Chelsea Ashbrook McCarthy
Rachel C. Agius
HOLLAND & KNIGHT, LLP

*Attorneys for Defendants GreatBanc Trust Company, Kevin Kruse, the Kruse Western, Inc. Board of Directors, and the Administration Committee*

GREATBANC'S SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

# Exhibit A

## SEVERANCE AGREEMENT

This Severance Agreement ("Agreement"), dated May 18, 2018, is entered into by and between Western Milling, LLC, a California Limited Liability Company ("Employer"), and Armando Zavala ("Employee"). Employer and Employee are sometimes referred to herein as "the Parties."

### RECITALS

A.   Employee is employed by and/or performs services for Employer as Truck Loading & Transfer I;

B.   Employees employment with Employer will end effective May 18, 2018; and

C.   In consideration for the Severance Payment described below, Employer and Employee desire to resolve any and all claims Employee may have against Employer relating to Employee's employment by Employer.

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties to this Agreement agree as follows:

5/23/18
Block State Hed
A.2

**1.   Consideration.**

a.   Severance Payment. Employer shall, subject to Employee's execution of this Agreement in accordance with its terms, pay Employee a gross sum in the amount of Two Thousand Five Hundred Dollars and No Cents ($2,500.00), less any federal, state or local taxes or other amounts required to be withheld by law. Finally, Employer agrees to not contest unemployment, should Employee choose to submit a claim for unemployment insurance.

2 checks
original
check w/
tax difference
A.2.

Employee agrees to pay federal or state taxes, if any, which are required by law to be paid with respect to this severance and the amounts paid or to be paid pursuant to it. Employee further agrees to indemnify and hold Employer harmless from any claims, demands, deficiencies, levies, assessments, executions, judgments or recoveries by any governmental entity against Employer for any amounts claimed due on account of this Agreement or pursuant to claims made under any federal or state tax laws, and any costs, expenses or damages sustained by Employer by reason of any such claims, including any amounts paid by Employer as taxes, attorneys' fees, deficiencies, and levies, assessments, fines, penalties, interest or otherwise.

**2.   General Release.**

a.   In consideration of Employee's agreement hereunder, including, but not limited to, the Severance Payment offered by Employer to Employee hereunder, Employee for himself, his heirs, spouse, executors, administrators, personal and legal representatives and assigns, hereby releases and forever discharges Employer, its subsidiaries and affiliates, and their respective present, former, and future officers, directors, employees, stockholders, attorneys,

A.2. Employee
Employer

insurers, and agents, and their respective heirs, executors, administrators, successors and assigns (collectively, "the Releasees") from any and all claims, demands, causes of action, obligations and liabilities whatsoever, whether or not presently known or unknown, or fixed or contingent, including, without limitation, any claims related to or arising out of Employee's employment relationship with Employer or the termination of that employment, including, without limitation, any claims for unpaid salary, severance, accrued vacation or sick pay, bonuses or any other type of compensation, other than as contemplated by the terms of this Agreement, and including, but not limited to, claims, demands or causes of action under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Age Discrimination in Employment Act (ADEA), the Older Workers Benefit Protection Act, the Americans with Disabilities Act, the Americans with Disabilities Act Amendments Act, the Family Medical Leave Act and related regulations, the California Family Rights Act and related regulations, the National Labor Relations Act, the Labor Management Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Occupational Safety and Health Act, Employee Retirement Income Security Act, the California Fair Employment and Housing Act, and any claims within any division of the California Department of Industrial Relations or Employment Development Department, common law claims for wrongful discharge or termination, constructive discharge, retaliatory discharge, breach of contract (employment or otherwise), conspiracy, fraud, breach of fiduciary duty, negligent misrepresentation, intentional or negligent infliction of emotional distress, defamation, libel, slander, conversion, invasion of privacy rights, tortious interference with contract, tortious interference with business relations, disparagement of business reputation and any other claim, demand or cause of action arising under any provision of the California Labor and Government Codes, except as any such waiver or release is prohibited by law, case law, or statute.

    b.    Employee acknowledges and agrees that:

    i.    The foregoing release is a general release of claims, demands, causes of action, obligation, damages, and liabilities of any nature whatsoever, and is intended to encompass all known and unknown, foreseen and unforeseen claims which he may have against the Releasees, or any of them, as of the moment he signs this Agreement, except for those claims which may arise out of the terms of this Agreement.

    ii.    Employee may hereafter discover facts different from or in addition to those which he now knows or believes to be true with respect to the claims, demands, causes of action, obligations, damages, and liabilities of any nature whatsoever that are the subject of this Agreement, and he expressly agrees to assume the risk of the possible discovery of additional or different facts, and further agrees that this Agreement shall be and remain effective in all respects regardless of such additional or different facts.

    iii.    Employee expressly waives and relinquishes all rights and benefits that he may have against the released Parties under California Civil Code Section 1542, which states as follows:


Employee
Employer

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Employee represents that he has read, understands, and has been fully advised as to the contents and legal effect of the foregoing Section 1542 and the waiver of all rights and benefits thereunder.

**3.** **Confidentiality and Liquidated Damages.** Employee agrees that neither he nor any of his agents shall, in any manner whatsoever, disclose, directly or indirectly, any information concerning the monetary terms and conditions of this Agreement, the fact that this Agreement was entered into, or the monetary proposals made during the negotiations that resulted in this Agreement to anyone unless compelled by a process of law or by other necessity, such as tax reporting, business necessity, or loan applications, provided that Employee advises any such person to whom disclosure is made as a matter of necessity that the matter(s) disclosed are to be held in the strictest confidence and may not be disclosed to or discussed with any other person, unless compelled by process of law or other necessity.

The provisions of this paragraph are effective as of the date of this Agreement. To the extent that Employee has discussed any aspect or term of this Agreement with any person prior to the date of this Agreement, Employee must inform them in writing no later than within twenty-four (24) hours of the date of this Agreement that anything he has previously discussed with them concerning the Agreement or the negotiations that resulted in the Agreement must be held in strictest confidence and may not be discussed with anyone for any purpose, except as may be required by law or other necessity.

If Employee or his agents breach any portion in this paragraph, Employee acknowledges that it will be extremely difficult to determine the damages suffered by Employer. It is, therefore, agreed that in the event of such a breach by Employee, then the breaching party shall pay Employer the sum of One Thousand Dollars ($1,000.00) as liquidated damages, in addition to any and all other rights or remedies available to Employer under applicable law.

Disclosure by Employer or its counsel of the terms or conditions of this Agreement to anyone, at any time, shall not in any way be construed as a waiver or modification of this provision or the obligations of Employee arising by virtue of this provision.

**4.** **Protection of Employer's Confidential Information.** Employee understands that, by virtue of his employment with Employer, Employee has acquired and was exposed to proprietary and other confidential information of Employer ("Confidential Information"). Confidential Information includes, but is not limited to, all ideas, information and materials, tangible or intangible, that is not generally known to Employer's competitors and/or the public, and that has or could have commercial value to Employer's business or that relates, in any manner, to the business of Employer, its personnel (including its shareholders, partners, principals, employees, representatives, and contractors), and its clients and all others with whom it does business that Employee learns or acquires during his employment with Employer. Confidential Information includes not only information disclosed by Employer (or its

Page 3 of 7



customers, clients, affiliates, or vendors) to Employee during the course of his employment with Employer, but also information developed or learned by Employee himself during the course of his employment with Employer.

Confidential Information includes, but is not limited to the following categories of information: research, product plans, customer lists, client lists, member lists, (including, but not limited to, customers of Employer on whom Employee called or with whom Employee became acquainted during the term of Employee's employment with Employer), potential customer lists (or "leads"), dealer agreements, pricing criteria, pricing lists, programs offered or existing programs, marketing programs, customer/client contracts, products, any formulas/mixtures of any type of product, markets, formulas, software, developments, inventions, processes, formula, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, manuals, documents, computer programs, source code, users' manuals, algorithms, compilations of technical, financial, legal or other data, names of suppliers and vendors, specifications, designs, business or marketing plans, forecasts, financial information, works in progress, and other technical or other business information disclosed to Employee by Employer either directly or indirectly in writing, orally or by drawings or observation of parts or equipment. Confidential Information does not include basic information that is generally known and used within Employer's industry. Confidential Information includes, but is not limited to, "trade secrets," as that term is defined by California Civil Code section 3246.1.

Employee acknowledges and agrees that such Confidential Information is secret, valuable, and owned by Employer, and that Employer has exercised substantial efforts to preserve the information's secrecy.

Employee agrees to hold in trust and in confidence all Confidential Information after the period of Employee's employment with Employer. Employee shall not disclose any Confidential Information to anyone outside of Employer without the prior written approval of an authorized officer of Employer and may not use any Confidential Information for any purpose. Employee shall immediately deliver to Employer any Confidential Information in a tangible form that Employee may hold or control, as well as all other property, equipment, documents or things that Employee was issued or otherwise received or obtained during his employment. The term "tangible form" includes ideas, information or materials in a written or graphic form, on a computer disk, or otherwise stored in or available through an electronic, a magnetic or any other form or medium.

## 5. Employee Covenants.

a. Employee represents and warrants that, since Employee's employment with Employer ended, Employee has not performed any services or incurred any liabilities on behalf of Employer. Employee further represents and warrants that Employee's separation from Employer is not in any way related to any work-related injury and that Employee has not experienced a work-related injury while employed by Employer. Employee further represents and warrants that Employee has not erased, written over, removed, copied, or destroyed any Company information and/or Confidential Information contained on any computer storage media or other electronic media. Employee also represents and warrants that during the course of Employee's employment with Employer, Employee did not defraud Employer or any of its

Page 4 of 7

AZ Employee
Employer

officers, directors, shareholders, members, managers, employees, customers, suppliers, or vendors. Employee further represents and warrants that he has received all compensation due and owing him, including all wages, accrued vacation, and business expenses.

        b.      Employee agrees and covenants that he shall, to the extent reasonably requested in writing, cooperate with Employer in any pending or future litigation in which Employer is a party, and regarding which Employee, by virtue of his employment with Employer has knowledge or information relevant to said litigation. Employee further agrees and covenants that, in any such litigation, he shall, without the necessity for subpoena, provide, in any jurisdiction in which Employer requests, truthful testimony relevant to said litigation. Employer agrees to pay for reasonable time and expenses incurred on the part of Employee for cooperation in such litigation.

        c.      Employee agrees to return all equipment issued to Employee by Employer to Employer. Employee agrees to return all property of Employer, including but not limited to lap top computers, electronic data, cell phones, Employer credit cards, chargers, printers, cameras, projectors, dollies, and projection screens. Employee agrees to return all keys to Employer's offices and company cars, as well as any security/parking cards for accessing Employer's offices.

      **6.**      **No Admission of Liability.** This Agreement is a compromise settlement of all potential claims by Employee, and does not constitute an admission of liability on the part of Employer or an admission directly or by implication that Employer has violated any law, regulation, contractual right, or other obligation owed to Employee. Employer may raise this Agreement as a complete defense to any claims brought by Employee regarding the matters covered by this Agreement.

      **7.**      **Neutral Reference.** Employer agrees to respond to all inquiries from prospective employers of Employee with a neutral reference consisting of: (1) Employee's dates of employment; and (2) Employee's job title. All requests for references shall be directed to the Human Resources Department.

      **8.**      **No Re-employment.** Employee knowingly, voluntarily, and irrevocably, waives his right to seek reinstatement, employment, or reemployment, with Employer and affirmatively agrees that he will not apply for such reinstatement, employment, or reemployment. Employee further agrees and acknowledges that any application for reinstatement, employment, or reemployment that Employee may submit shall not be processed and that the failure to process his application shall not under any circumstances be considered an act of retaliation under any statute or other public policy. This applies not only to Employer, but also to any business entity owned, managed or licensed in whole or in part, by Employer. Employee agrees that if Employee knowingly or unknowingly applies for a position with an entity of the status described herein and is offered or accepts a position, the offer may be withdrawn, or Employee may be terminated immediately without notice or cause. Employee further agrees that in the event of such an offer and withdrawal, or hiring and termination as described herein, Employee waives any right to seek legal or administrative redress of any kind for events relating to the withdrawal of the offer, or termination of employment, as described in this paragraph.



    Employee
    Employer

**9.** **Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions will nevertheless continue in full force and effect without being impaired or invalidated in any way.

**10.** **Entire Agreement.** This Agreement contains the entire agreement between the Parties and may not be altered, amended or modified in any respect, except by a writing duly executed by the party to be charged. All prior agreements, understandings, oral agreements and writings are expressly superseded hereby and are of no further force or effect except for any arbitration agreement signed by the Parties.

**11.** **Attorneys' Fees.** If any dispute shall arise concerning the execution, interpretation, breach, enforcement, or modification of this Agreement and/or if either party commences an arbitration to resolve that dispute, the Court shall award to the prevailing party, in addition to such other relief as may be appropriate, reasonable attorneys' fees and costs incurred in resolving that dispute.

**12.** **Headings and Captions.** The headings and captions used in this Agreement are for convenience of reference only, and shall in no way define, limit, expand or otherwise affect the meaning or construction of any provision of this Agreement.

**13.** **Arbitration Agreement.** Any dispute between or among Employee and Employer arising out of or related to this Agreement, shall be resolved by arbitration pursuant to the Mutual Arbitration of Disputes Agreement attached hereto as Exhibit "A."

**14.** **Counterparts.** This Agreement may be executed in counterparts, and all copies so executed shall be binding upon the Parties. The signatures of the Parties may be communicated by facsimile or email and such signatures shall have the same binding effect as original signatures.

**15.** **Additional Documents.** To the extent the parties are required to execute additional documents to effectuate this Agreement, the parties agree to execute and deliver such other and further documents as may be required to carry out the terms of this Agreement.

**16.** **Governing Law.** The validity, performance, construction and effect of this Agreement shall be governed by the substantive laws of the State of California, without regard to any provisions for choice of law. In any action arising from the enforcement and/or interpretation of this Agreement, venue shall be in the County of Tulare, State of California.

**17.** **Successor.** This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, personal representatives, successors and assigns.

**18.** **Notice.** Any notice required or permitted under this Agreement shall be given in writing by certified mail to the following addresses:



A.Z. Employee
Employer

**Employer:** Notices shall be mailed to:

> Aubrey Michael
> EVP of HR
> Western Milling, LLC
> 31120 West Street
> P.O. Box 1029
> Goshen, California 93227

**Employee:** Notices shall be mailed to:

> Armando Zavala
> 1520 Pioneer Ave
> Porterville, CA 93257

For the purpose of determining compliance with any time limit in this Agreement, a notice shall be deemed to have been duly given on the date postmarked.

**19.    Voluntary Execution of Agreement.** Employee understands and agrees that he executed this Agreement voluntarily, without any duress or undue influence on the part or behalf of Employer or any third party, with the full intent of releasing all of his claims against Employer and any of the other Releasees. Employee acknowledges that: (a) he has read this Severance Agreement; (b) he has been represented in the preparation, negotiation, and execution of this Severance Agreement by legal counsel of his own choice or has voluntarily elected not to retain legal counsel; (c) he understands the terms and consequences of this Severance Agreement and of the releases it contains; and (d) he is fully aware of the legal and binding effect of this Severance Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first set forth above.

_____                    $5 - 18 - 18$
Employee                                                        Date

Western Milling, LLC

By _Nikki Bautista_____                     $5|23|18$

Title _Generalist, People Operations_         Date

Page 7 of 7

A.Z Employee
Employer

# Exhibit B

WESTERN MILLING

EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

TABLE OF CONTENTS

ARTICLE                                                                              PAGE

ARTICLE I. NAME OF THE TRUST ...............................................................................1
ARTICLE II. MANAGEMENT AND CONTROL OF TRUST FUND ASSETS .......................1

   2.1    The Trust Fund ...............................................................................................1
   2.2    Trust Fund Administration ...............................................................................1
   2.3    Investment of Trust Assets ...............................................................................2
   2.4    Sales of Company Stock ...................................................................................2
   2.5    Voting and Tendering of Shares ........................................................................2
   2.6    Trustee Powers.................................................................................................2
   2.7    Borrowing to Purchase Company Stock ...........................................................5
   2.8    Exercise of Duties............................................................................................7
   2.9    Tender Offer for Company Stock .....................................................................7
   2.10   Stock Dividends, Splits and Other Capital Reorganizations .............................8
ARTICLE III. NO REVERSION TO COMPANY OR ADOPTING EMPLOYERS ..................8
   3.1    No Reversion to Employers..............................................................................8
   3.2    Denial of Tax Qualification..............................................................................8
   3.3    Mistake of Law ...............................................................................................8
   3.4    Mistake of Fact ...............................................................................................8
   3.5    Residual Assets ...............................................................................................9
ARTICLE IV. CHANGE OF TRUSTEE...............................................................................9
   4.1    Resignation .....................................................................................................9
   4.2    Removal of Trustee..........................................................................................9
   4.3    Duties of Resigning or Removed Trustee and of Successor Trustee...................9
   4.4    Changes in Organization of Trustee ..................................................................9
ARTICLE V. MISCELLANEOUS PROVISIONS..................................................................9
   5.1    Disagreement as to Acts ...................................................................................9
   5.2    Persons Dealing With Trustee ...........................................................................9
   5.3    Benefits May Not Be Assigned or Alienated ...................................................10
   5.4    Indemnification..............................................................................................10
   5.5    Evidence .......................................................................................................12

5.6    Waiver of Notice...................................................................................................12

5.7    Counterparts............................................................................................................12

5.8    Governing Laws.......................................................................................................12

5.9    Severability..............................................................................................................12

5.10   Successors................................................................................................................12

5.11   Successor Company.................................................................................................12

5.12   Compensation and Expenses ..................................................................................12

5.13   Limit of Responsibility...........................................................................................12

5.14   Gender and Number ................................................................................................13

5.15   Text to Control........................................................................................................13

5.16   Controlling Provisions ............................................................................................13

5.17   Construction of Powers...........................................................................................13

5.18   Right of the Company to Inspect Trust Fund Records ...........................................13

5.19   Application of Rules ...............................................................................................13

ARTICLE VI. AMENDMENT AND TERMINATION..............................................................13

6.1    Amendment..............................................................................................................13

6.2    Termination of the Plan ..........................................................................................13

## WESTERN MILLING

## EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

THIS TRUST AGREEMENT (the "Trust Agreement") is entered into this 4th day of November, 2015 (the "Trust Effective Date") by and between KRUSE WESTERN, INC., a California corporation (the "Company"), and GreatBanc Trust Company, an Illinois corporation, as trustee (the "Trustee") for the Western Milling Employee Stock Ownership Trust (the "Trust").

## RECITALS

The Company established an employee stock ownership plan, known as the Western Milling Employee Stock Ownership Plan (the "Plan"). The Plan is designed to invest primarily in stock of the Company and is intended to meet the requirements of Sections 401(a) and 4975(e)(7) of the Internal Revenue Code of 1986, as amended (the "Code"), and Section 407(d)(6) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Unless otherwise provided herein, defined terms shall have the meanings set forth in the Plan.

This Trust forms a part of the Plan and is to be used to fund the benefits provided under the Plan. Therefore, in consideration of the purposes of the Plan and of the mutual covenants contained in this Agreement, it is agreed that the Trustee hereby accepts appointment as Trustee, effective as of the Trust Effective Date.

The Company and the Trustee further agree as set forth in this Agreement.

### ARTICLE I.

### NAME OF THE TRUST

This Trust Agreement and the Trust evidenced by this Agreement shall be known as the "Western Milling Employee Stock Ownership Trust."

### ARTICLE II.

### MANAGEMENT AND CONTROL OF TRUST FUND ASSETS

2.1    The Trust Fund.   The term "Trust Fund" means all property of every kind held by the Trustee from time to time pursuant to this Trust Agreement.

2.2    Trust Fund Administration.   All contributions made under the Plan will be held, managed, and controlled by the Trustee acting under this Trust Agreement, which forms a part of the Plan.   The administration of the Trust Fund shall be coordinated with the administration of the Plan.    The Plan shall be administered by a committee of one or more persons (the "Administrator"), the members of which the Company shall certify to the Trustee.   The Administrator may authorize one or more individuals to sign all communications between the Administrator and Trustee and shall at all times keep the Trustee advised of the names of the

members of the Administrator, the individuals authorized to sign on behalf of the Administrator and provide specimen signatures thereof. With the Trustee's prior written consent, the Administrator may authorize the Trustee to act, without specific directions from the Administrator, on any matter or class of matters with respect to which directions or instructions from the Administrator are called for hereunder. The Trustee shall be fully protected in relying on any communication sent by any authorized person and shall not be required to verify the accuracy or validity of any signature unless the Trustee has reasonable grounds to doubt the authenticity of any signature. If the Trustee requests any directions hereunder with respect to a matter that is not within the Trustee's sole discretion and does not receive them, the Trustee shall act or refrain from acting, as it may determine, with no liability for such action or inaction. If at any time the persons(s) serving as the Administrator and the person(s) serving as the Trustee are identical, then there shall be no need for written instructions from the Administrator to the Trustee, and all actions taken by the Trustee shall be deemed to have been properly authorized by the Administrator.

2.3     <u>Investment of Trust Assets</u>. Assets held by the Trustee in the Trust Fund shall be invested by the Trustee primarily in Company Stock. Employer Contributions made by the Company to the Plan in cash and other assets of the Trust Fund may be used to purchase shares of Company Stock from the Company or from any shareholder of the Company. The Trustee may also invest assets of the Trust Fund in other properties, as the Trustee deems appropriate for the Trust Fund. Company Stock shall be purchased by the Trustee only at prices which do not exceed the fair market value of the shares purchased, as determined by the Trustee based upon a valuation by an independent appraiser. All valuations of Company Stock (to the extent not readily tradable on an established securities market) with respect to activities carried on by the Trustee must be made by an "independent appraiser," meeting requirements similar to the requirements of the regulations prescribed under Code Section 170(a)(1).

2.4     <u>Sales of Company Stock</u>. The Trustee may sell shares of Company Stock to any person, including the Company, at a price not less than the fair market value of the shares sold as of the date of the sale, as determined by the Trustee based upon a valuation by an independent appraiser. However, the Trustee shall not sell any shares of Company Stock in a transaction that would be a "prohibited transaction" within the meaning of the Code or ERISA.

2.5     <u>Voting and Tendering of Shares</u>. The Trustee shall exercise all voting, tender, exchange and other rights with respect to Company Stock held in the Trust in accordance with the provisions of Section 13 of the Plan and otherwise consistent with its duties described in Section 2.8 of this Agreement.

2.6     <u>Trustee Powers</u>. Subject to the provisions of Sections 2.3, 2.5, 2.8 and 2.9, the Trustee shall have the following powers, rights, and duties with respect to the Trust Fund, in addition to those provided elsewhere in this Trust Agreement or by law:

(a)     To receive and hold all contributions paid and all assets transferred to the Trustee under the Plan; provided, however, that the Trustee shall have no duty to require any contributions to be made to it, or to determine that the contributions received by it comply with the provisions of the Plan or with any resolution of the Board providing therefor.

(b)     Subject to the provisions of Section 2.8, to contract with or otherwise enter into transactions between the Trustee and Company or any Company shareholder for the purpose of acquiring Company Stock and to retain such Company Stock or dispose of Company Stock, provided, however, that in the event counsel for the Company determines that Company Stock so disposed of requires registration under the Securities Act of 1933 and/or qualification of the securities under the "blue sky" laws of any state or states, then the Company, at its own expense, will take or cause to be taken any and all such actions as may be necessary or appropriate to effect such registration or qualification.

(c)     To have the exclusive authority to invest and reinvest the Trust Fund in property of any kind, real or personal, including debt or equity instruments of the Company.

(d)     To manage, operate, sell, contract to sell, grant options with respect to, convey, exchange, partition, transfer, abandon, improve, repair, insert, lease for any term (although commencing in the future or extending beyond the term of this Trust), and otherwise deal with all property of the Trust Fund, real or personal, in the manner, for the considerations, and on the terms and conditions as the Trustee shall decide.

(e)     To retain in cash any portion of the Trust Fund (pending investment, reinvestment, or payment of benefits) and, subject to Section 2.3, to deposit cash in any depositary (including a banking affiliate of the trust company, if any, acting as Trustee ), without liability for interest, or to deposit cash in savings accounts or time certificates of deposit bearing a reasonable rate of interest in a banking affiliate of the trust company acting as Trustee or in money market funds or money market mutual funds established, maintained, or managed by the Trustee (or an affiliate of the Trustee), including any money market mutual fund for which the Trustee or an affiliate of the Trustee serves as investment adviser.

(f)     To make payments from the Trust Fund to such persons or trusts, in such manner, at such times and in such forms as directed by the Administrator (as that term is defined in Section 2.10 below) in accordance with the Plan terms without inquiring as to whether a payee is entitled to the payment, or as to whether a payment is proper, and without liability for a payment made in good faith without actual notice or knowledge that such payments is not appropriate under the terms of the Plan.   If any payment of benefits directed to be made from the Trust Fund by the Trustee is not claimed, the Trustee shall notify the Administrator of that fact promptly.   The Trustee shall dispose of such payments as the Administrator shall direct.   The Trustee shall have no obligation to search for or ascertain the whereabouts of any payee or distributee of benefits from the Trust Fund.

(g)     To begin, maintain, or defend any litigation, administrative proceeding, or government agency investigation, necessary in connection with the investment, reinvestment, and administration of the Trust; and, to the extent not paid from the Trust, the Company will indemnify the Trustee against all expenses and liabilities reasonably sustained or anticipated by it by reason thereof (including attorneys' fees), in addition to the indemnification provisions set forth in Section 5.4.

(h)     To have all rights of an individual owner, including the power to give proxies to vote stocks, to join in or oppose (alone or jointly with others) voting trusts, mergers, consolidations, foreclosures, reorganizations, recapitalizations, or liquidations, and to exercise or sell stock subscription or conversion rights.

(i)     To hold securities or other property in the name of the Trustee or its nominee, or in any other form as it determines best, with or without disclosing the Trust relationship, provided the records of the Trustee shall indicate the actual ownership of the securities or other property.

(j)     To deposit securities with a "clearing corporation," as defined in Article 8 of the Illinois Uniform Commercial Code. The certificates representing securities, including those in bearer form, may be held in bulk form with, and may be merged into, certificates of the same class of the same issuer which constitute assets of other accounts or owners, without certification as to the ownership attached. Utilization of a book-entry system may be made for the transfer or pledge of securities held by the Trustee or by a clearing corporation. However, at all times the Trustee shall maintain a separate and distinct record of the securities owned by the Trust Fund.

(k)     To participate in and use the Federal Book-Entry Account System, a service provided by the Federal Reserve Bank for its member banks for deposit of Treasury securities.

(l)     To retain any funds or property subject to any dispute, without liability for the payment of interest, or to decline to make payment or delivery of the funds or property, until final adjudication is made by a court of competent jurisdiction.

(m)     To report to the Company on the last day of each Plan Year, on any Valuation Date (or as soon thereafter as practicable), or at any other times as may be required under the Plan, the number of shares of Company Stock held by the Trust and the net worth of the Trust Fund (that is, the fair market value of all property held in the Trust Fund, reduced by any liabilities other than liabilities to participants in the Plan and their beneficiaries, as determined by the Trustee).

(n)     To furnish to the Administrator and the Company an annual written account, and accounts for any other periods as may be required under the Plan, showing the net worth of the Trust Fund at the end of the period, all investments, receipts, disbursements, and other transactions made or entered into by the Trustee during the accounting period, and any other information that the Trustee may possess which the Administrator requires in order to comply with Section 103 of ERISA. All accounts of the Trustee shall be kept on an accrual basis. If during the term of this Trust Agreement, the Department of Labor issues regulations under ERISA regarding the valuation of securities or other assets for purposes of the reports required by ERISA, the Trustee shall use those valuation methods for purposes of the accounts described by this subsection. The Company may approve such accounting by written notice of approval delivered to the Trustee or by failure to express objection to such accounting in writing delivered to the Trustee within one hundred twenty (120) days from the date upon which the accounting

-4-

was delivered to the Company.   Upon the receipt of a written approval of the accounting, or upon the passage of the period of time within which objection may be filed without written objections having been delivered to the Trustee, such accounting shall be deemed to be approved, and the Trustee shall be released and discharged as to all items, matters and things set forth in such account, as fully as if such accounting had been settled and allowed by decree of a court of competent jurisdiction in an action or proceeding in which the Trustee, the Company and all persons having or claiming to have any interest in the Trust Fund or under the Plan were parties.

(o)     To pay any estate, inheritance, income, withholding, or other tax, charge, or assessment attributable to any benefit which, in the Trustee's opinion, it shall or may be required to pay out of the benefit; and to require, before making any payment, a release or other document from any taxing authority, and indemnity from the intended payee, as the Trustee shall deem necessary for its protection.

(p)     To employ and reasonably rely upon information and advice furnished by agents, attorneys, secretaries, accountants, or other persons (who also may be employed by or represent the Company) for any purposes that the Trustee considers desirable.

(q)     To select an independent appraiser to determine the fair market value of the Company Stock in accordance with Section 3(18)(B) of ERISA.

(r)     To invest part of the assets of the Trust Fund in any collective investment trust which then provides for the pooling of the assets of plans described in Section 401(a) of the Code and which is exempt from tax under Section 501(a) of the Code (or any comparable provisions of any further legislation that amends, supplements, or supersedes those Sections), and which is then maintained by the trust company acting as Trustee under this Agreement or an affiliate of that trust company (whether or not the collective investment trust provides for the pooling of assets of other tax-exempt trusts).   However, the collective investment trust must be exempt from tax under the Code or under regulations or rulings issued by the Internal Revenue Service.   The provisions of the document governing the collective investment trust, as it may be amended from time to time, shall govern any investment in that trust and are hereby made a part of this Trust Agreement.

(s)     To assume, until advised to the contrary, that the Plan and the Trust evidenced by this Trust Agreement are qualified under Section 401(a) of the Code and the Trust is entitled to tax exemption under Section 501(a) of the Code.

(t)     To perform any and all other acts in its judgment necessary or appropriate for the proper and advantageous management, investment, and distribution of the Trust Fund.

2.7     <u>Borrowing to Purchase Company Stock</u>.   Subject to the provisions of Section 2.8, the Trustee shall have the power to borrow funds and otherwise incur indebtedness for the purpose of purchasing Company Stock or for the purpose of repaying all or any portion of any outstanding

indebtedness incurred by the Trustee to purchase Company Stock, subject to the following conditions:

(a)     The loan agreement or debt instrument must be for a specific term and may not be payable at the demand of any person, except in the case of default.

(b)     The rate of interest payable on the debt obligation may be fixed or variable, but the rate must not exceed a reasonable rate of interest taking into account all relevant factors, including the amount and duration of the indebtedness, the security for and any guarantee of the indebtedness, and the creditworthiness of the Plan and of any guarantor of the indebtedness.  At the time that a loan is made, the interest rate for the loan and the price of shares of Company Stock to be acquired with the loan proceeds should not be such that Plan assets might be drained off.

(c)     Within a reasonable time after receipt of any loan proceeds, the Trustee shall use the proceeds to purchase Company Stock or to repay all or any portion of any prior outstanding indebtedness that has been incurred by the Trustee to acquire Company Stock.

(d)     The only assets of the Plan which may be pledged as collateral for the debt are shares of Company Stock that were acquired in connection with the debt or any prior indebtedness, to the extent that the prior indebtedness is repaid or refinanced with the new debt.  Any shares of Company Stock which are pledged as collateral shall be released from the pledge and allocated to the accounts of the participants in the manner provided for in Article V of the Plan.

(e)     The loan agreement or debt instrument shall provide that no person entitled to payment under the instrument shall have any right to assets of the Plan other than: (i) collateral given to secure payment of the indebtedness, in accordance with subsection (d) above; (ii) contributions to the Plan to enable the Trustee to meet its obligations under the debt instrument (other than contributions of Company Stock); and (iii) earnings attributable to the shares of Company Stock pledged as collateral to secure the indebtedness and earnings attributable to the contributions made to the Plan to enable the Trustee to meet its obligations under the debt instrument (other than contributions of Company Stock).

(f)     Except as provided in subsection (e) above, the debt obligation must be without recourse against the Plan.

(g)     The payments made by the Trustee during any Plan Year on all outstanding indebtedness incurred by the Trustee for the purpose of acquiring shares of Company Stock shall not exceed an amount equal to the sum of (i) all contributions made to the Plan for the purpose of enabling the Trustee to meet its obligations under the debt instrument, plus (ii) all earnings on those contributions and all earnings on the shares of Company Stock pledged as collateral to secure the payment of the indebtedness in accordance with subsection (d) above during or prior to the applicable Plan Year, less (iii) all prior payments

made on the indebtedness.   Such contributions and earnings must be accounted for separately by the Trustee until the loan is repaid.

(h)   The debt instrument must provide that the value of the Plan assets to be transferred in satisfaction of the debt obligation in the case of a default shall not exceed the amount of the default.   If the lender or payee is a "disqualified person" (as that term is defined in Section 4975(e) of the Code) or is a "party in interest" to the Plan (as that term is defined in Section 3(14) of ERISA), the debt instrument must provide for a transfer of Plan assets upon a default only upon and to the extent of the failure of the Plan to meet the payment schedule set forth in the debt instrument.

(i)   Except as provided in Sections 9.2 and 9.3 of the Plan, Company Stock acquired with the proceeds of a debt obligation shall not be subject to a put, call, or other option and shall not be subject to a buy-sell or similar arrangement, either while the Company Stock is held in the Trust Fund or after it is distributed to or on account of any participants.

(j)   The Trustee may use C Corporation dividends and S Corporation distributions on Company Stock held in the Suspense Account to repay any maturing obligations under ESOP Loans incurred by the Trustee for the purpose of purchasing Company Stock.

(k)   The loan must be primarily for the benefit of the Plan participants and their beneficiaries.

2.8   <u>Exercise of Duties</u>.   The Trustee shall discharge its duties under this Agreement solely in the interest of the Plan participants and their beneficiaries and:

(a)   for the exclusive purpose of:

(1)   providing benefits to Plan participants and their beneficiaries; and

(2)   defraying reasonable expenses of administering the Trust;

(b)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

(c)   in accordance with the documents and instruments governing the Plan unless, in the good faith judgment of the Trustee, the documents and instruments are not consistent with the provisions of ERISA; and

(d)   in a manner that does not constitute a non-exempt prohibited transaction under Section 4975 of the Code or Sections 406 or 407 of ERISA.

2.9   <u>Tender Offer for Company Stock</u>.   In the event of a tender offer or other offer to purchase shares of Company Stock, the Trustee shall tender or sell the shares in its sole discretion, subject to the fiduciary duties under ERISA.

(a)     <u>Offer for Fewer than All Shares</u>.   In the event that an offer for fewer than all of the shares of Company Stock held by the Trustee is received by the Trust, the Trustee's decision to tender the shares, if made, will be applied on a pro rata basis in accordance with the number or amount of such shares in each participant's Account.

(b)     <u>Use of Proceeds</u>.   Funds received in exchange for tendered shares will be credited to the Company Stock Accounts of the participants whose shares were tendered or the Suspense Account from which such shares were tendered, and all such proceeds will be used by the Trustee to purchase Company Stock, as soon as practicable, to the extent possible, but only if the Trustee determines that such reinvestment is prudent and otherwise consistent with ERISA.   In the interim, the Trustee will invest such funds in short-term investments permitted under the Trust Agreement.

2.10   <u>Stock Dividends, Splits and Other Capital Reorganizations</u>.   Any Company Stock received by the Trustee as a result of a stock split or dividend or as a result of reorganization or other recapitalization of the Company shall be allocated as of each Valuation Date under the Plan in proportion to the Company Stock to which it is attributable, in accordance with the terms of the Plan.

ARTICLE III.

<u>NO REVERSION TO COMPANY OR ADOPTING EMPLOYERS</u>

3.1     <u>No Reversion to Employers</u>.   Except as provided below in this Article III, no part of the corpus or income of the Trust Fund shall revert to the Company or any related company that adopts the Plan (collectively the "Employers") or be used for, or diverted to, purposes other than for the exclusive benefit of participants and their beneficiaries.

3.2     <u>Denial of Tax Qualification</u>.   If any contribution under the Plan is conditioned on initial qualification of the Plan under Sections 401(a) and 4975(e)(7) of the Code and if the Plan does not so qualify, then upon written request of the Company, the Trustee shall return to each Employer the amount of its contribution and any earnings attributable to the contribution within one calendar year after the date initial qualification of the Plan is denied.

3.3     <u>Mistake of Law</u>.   If a contribution is conditioned upon the deductibility of the contribution under Section 404 of the Code and if the deduction is disallowed, then upon the written request of the Company, the Trustee shall return to the contributing Employer within one year after the date the deduction is disallowed the excess of (a) the amount contributed over (b) the amount that would have been contributed had there not occurred a mistake in determining the deduction, reduced by losses attributable to the excess (and limited so as not to reduce the balance of the individual account of any participant or beneficiary from what it would have been if the excess had not been contributed).

3.4     <u>Mistake of Fact</u>.   If a contribution or any portion thereof is made by an Employer by a mistake of fact, then upon written request of the Company, the Trustee shall return to the contributing Employer within one year after the date of the contribution the excess of (a) the amount contributed over (b) the amount that would have been contributed had there not occurred a

-8-

mistake of fact, reduced by losses attributable to the excess (and limited so as not to reduce the balance of the individual account of any participant or beneficiary from what it would have been if the excess had not been contributed).

3.5     Residual Assets.   If after all liabilities of the Plan to participants and their beneficiaries have been satisfied any residual assets remain, those assets shall be used for the benefit of the participants.

## ARTICLE IV.

## CHANGE OF TRUSTEE

4.1     Resignation.   The Trustee may resign at any time by giving at least 30 days' advance written notice to the Company.

4.2     Removal of Trustee.   By action of the Board or of a person designated by resolution of the Board, the Company may remove the Trustee by giving at least 30 days' advance written notice to the Trustee, subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship.

4.3     Duties of Resigning or Removed Trustee and of Successor Trustee.   If a Trustee resigns or is removed, it shall promptly transfer and deliver the assets of the Trust Fund to the successor Trustee, after reserving a reasonable amount to provide for its fees and expenses and any sums chargeable as the Trust Fund for which it may be liable.   Each successor Trustee shall succeed to the title to the Trust Fund vested in its predecessor without the signing or filing of any further instrument, but any resigning or removed Trustee shall sign all documents and perform all acts necessary to vest title of record in any successor Trustee.   Each successor shall have all the powers, rights, and duties conferred by this Agreement as if originally named Trustee.   No successor Trustee shall be personally liable for any act or failure to act of a predecessor Trustee and no predecessor Trustee will be liable for any act or failure to act of a successor Trustee.

4.4     Changes in Organization of Trustee.   If the Trustee shall be converted into, merged or consolidated with, or shall sell or transfer substantially all of its assets and business to a corporation formed under the laws of the United States of America or any of its political subdivisions, that corporation shall become the Trustee of the Trust with the same effect as though specifically so named.

## ARTICLE V.

## MISCELLANEOUS PROVISIONS

5.1     Disagreement as to Acts.   If there is a disagreement between the Trustee and anyone as to any act or transaction reported in any accounting, the Trustee shall have the right to have accounts settled by a court of competent jurisdiction.

5.2     Persons Dealing With Trustee.   No person dealing with the Trustee shall be required to see to the application of any money paid or property delivered to the Trustee or to

determine whether or not the Trustee is acting pursuant to any authority granted under this Trust Agreement.

    5.3    <u>Benefits May Not Be Assigned or Alienated</u>. The interests of Plan participants and of their beneficiaries under this Trust Agreement may not be voluntarily or involuntarily assigned or alienated. However, the provisions of this Section 5.3 shall not apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a "qualified domestic relations order," as that term is defined in Section 414(p) of the Code or subject to a judgment or settlement described in Section 401(a)(13)(C) of the Code.

    5.4    <u>Indemnification</u>.

    (a)    For purposes of this Agreement, the term "Indemnitees" shall mean the Trustee and its officers, directors, employees and agents. Subject to the applicable provisions of ERISA, the Company and any subsidiaries (collectively, the "Indemnitors") shall jointly and severally release, indemnify and hold harmless the Indemnitees for any loss, cost, expense, or other damage, including (but not limited to) attorney's fees, suffered by any of the Indemnitees resulting from, or incurred with respect to, any legal proceedings, actions, suits, arbitrations and investigations related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement and the Trust (the "Right of Indemnification"). The Right of Indemnification provided for in this Section 5.4 shall survive the removal or resignation of the trustee, and shall further extend to: (a) any action taken or not taken in good faith by any of the Indemnitees; and (b) all reasonable costs and expenses incurred by the Indemnitees in enforcing the Right of Indemnification, including, but not limited to, reasonable attorneys' fees and court costs. However, the Right of Indemnification shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal can be taken, to have resulted either from the gross negligence or from the willful misconduct of one or more of the Indemnitees or from the violation or breach of any fiduciary duty imposed under ERISA on any one or more of the Indemnitees. An Indemnitee who receives an advancement of fees or expenses from the Company pursuant to this paragraph shall make arrangements reasonably satisfactory to the Company to ensure that such Indemnitee will reimburse the Company for such advancements in the event it is determined the indemnitee is not entitled to retain such amounts hereunder.

    (b)    <u>Defense of Actions</u>.

    (i)    <u>Notice</u>. If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Indemnitors pursuant to Section 5.4 (a "Proceeding"), an Indemnitee shall notify the Company of the Proceeding in writing within 30 days of the commencement of the Proceeding. However, the failure to so notify the Company shall not relieve the Indemnitors from their Right of Indemnification obligations, except to the extent that the failure to so notify the Company shall actually have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the

-10-

Proceeding with counsel reasonably satisfactory to the Indemnitees or to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all costs of defense.

(ii)     <u>Reimbursement of Expenses</u>. The Indemnitors shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding, including (but not limited to) costs of investigation, of testifying in any hearing, of responding to discovery proceedings, and of consulting with the Indemnitors or the attorneys for the Indemnitors. The indemnitees shall have the right to employ their own counsel in any Proceeding, and the fees and expenses of the Indemnitees' counsel shall be paid by the Indemnitors as they are incurred, if any one or more of the following conditions are satisfied:

A.     the employment by the indemnitees of their own counsel shall be authorized by the Company;

B.     the Indemnitees are advised by their counsel that there may be one or more legal defenses available to them which are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

C.     the Company fails to assume the defense of the Proceeding and to employ counsel satisfactory to the Indemnitees within 14 days after being notified of the commencement of the Proceeding; or

D.     the Indemnitees shall be informed by their counsel that a conflict exists with the counsel selected by the Company.

(c)     <u>Governmental Investigations</u>. The provisions of this Section 5.4 shall apply if any governmental or private commission or regulatory authority shall investigate any of the Indemnitees, or shall require any of the Indemnitees to testify in any hearing or in connection with any investigation, regarding the performance of services by the Indemnitees pursuant to this Agreement. Investigations covered by this Section 5.4 shall include, but shall not be limited to, investigations conducted by any agency of the United States or of any state, by any committee of the Congress of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any investigation, the Indemnitees shall have the right to employ separate counsel to represent them, and the Indemnitors shall pay the reasonable fees and expenses of the Indemnitees' counsel as they are incurred. The Trustee agrees that it shall reasonably cooperate with the Company in connection with any investigation.

(d)     <u>Limitation</u>. If a court of competent jurisdiction shall hold that any payment or award of indemnification pursuant to the terms of this Agreement shall be unavailable to any one or more of the Indemnitees from the Indemnitors for any reason other than their gross negligence or willful misconduct, the Indemnitees shall nevertheless have a right of

contribution against the Indemnitors, which shall accordingly reimburse the affected indemnitees consistent with this Agreement, but taking into account the basis for the denial of full indemnification by the court.

5.5     Evidence.   Evidence required of anyone under this Trust Agreement may be by certificate, affidavit, document, or other instrument which the person acting in reliance thereon considers pertinent and reliable and which is signed, made, or presented by the proper party.

5.6     Waiver of Notice.   Any notice required under this Trust Agreement may be waived by the person entitled to the notice.

5.7     Counterparts.   This Trust Agreement may be signed in any number of counterparts, each of which shall be deemed an original, and no other counterpart need be produced.

5.8     Governing Laws.   This Trust Agreement shall be construed and administered according to the laws of the State of Illinois to the extent that those laws are not preempted by the laws of the United States of America.

5.9     Severability.   If any provision of this Trust Agreement is held illegal or invalid, the illegality or invalidity shall not affect the remaining provisions of the Trust Agreement, but shall be severable, and the Agreement shall be construed and enforced as if the illegal or invalid provision had never been inserted herein.

5.10     Successors.   The provisions of this Trust Agreement shall be binding upon the Company, the Employers, the Trustee, the Administrator, the Named Fiduciaries, and their successors and on all persons entitled to benefits under the Plan and their respective heirs and legal representatives.

5.11     Successor Company.   If a successor to the Company or a purchaser of all or substantially all of the Company's assets elects to continue the Plan, the successor or purchaser shall be substituted for the Company under this Trust Agreement.

5.12     Compensation and Expenses.   The Trustee shall be entitled to reasonable compensation for services, as agreed to between the Company and the Trustee from time to time in writing and to reimbursement of all reasonable expenses incurred by it in the administration of the Trust.   The Trustee may pay from the Trust Fund all of the Trust expenses, taxes, and charges incurred in connection with the collection, administration, management, investment, protection, and distribution of the Trust Fund and of the Plan to the extent that they are not paid directly by the Company, including fees of persons employed by the Trustee in accordance with Sections 2.6(p) and 2.6(q), and including the Trustee's fees.

5.13     Limit of Responsibility.   The Company shall timely deliver to the Trustee a certified or signed copy of the Plan and of any amendments to the Plan; and the rights, powers, and duties of the Trustee shall be governed by the terms of this Trust Agreement and the provisions of the Plan.

5.14   Gender and Number.   In this Trust Agreement, where the context admits, words in the masculine gender include the feminine and neuter genders, words in the singular include the plural, and words in the plural include the singular.

5.15   Text to Control.   The article and section headings and numbers in this Trust Agreement are included solely for convenience of reference.   If there shall be any conflict between the headings and numbers and the text of this Trust Agreement, the text shall control.

5.16   Controlling Provisions.   To the extent the provisions of the Plan and this Trust Agreement conflict, the provisions of this Trust Agreement shall govern.

5.17   Construction of Powers.   No enumeration of special powers of the Trustee by any of the provisions of this Trust Agreement shall be construed to limit any grant of general powers to the Trustee contained in, conferred by, or reasonably to be implied from any other of the provisions of this Trust Agreement.   All the powers and authority conferred upon the Trustee by this Agreement may be exercised in the manner provided for in this Agreement without application to any court for leave or confirmation.

5.18   Right of the Company to Inspect Trust Fund Records.   The Company may at its own expense, and at any time or from time to time during Trustee's regular business hours, cause an examination of the books and records of the Trust Fund to be made by attorneys, accountants, auditors, or other agents of the Company that the Company shall select for that purpose, and it may cause a report of the examination to be made to the Board of Directors of the Company.

5.19   Application of Rules.   In operating and administering the Trust Fund, the Trustee shall apply all rules of procedure and regulations adopted by it in a uniform and nondiscriminatory manner.

## ARTICLE VI.

## AMENDMENT AND TERMINATION

6.1   Amendment.   Subject to the provisions of Article III, the Company reserves the right to amend this Trust Agreement at any time by action of the Board or of a person designated by resolution of the Board.   However, no amendment shall change the rights, duties, and liabilities of the Trustee under this Trust Agreement without its consent.

6.2   Termination of the Plan.

(a)   In the event that the Plan is terminated, the Administrator shall notify the Trustee as to whether the Trust Fund is to be distributed or is to be maintained by the Trustee in accordance with the provisions of the Plan and this ESOP Trust Agreement.   If the Administrator directs that the Trust Fund is to be distributed, the Trustee shall establish the fair market value of the Trust Fund as of such interim Valuation Date as is designated by the Administrator, and, after paying the reasonable expenses involved in the termination of the Plan, shall distribute all or a part of the assets of the Trust Fund (converting such assets into cash, as necessary) in accordance with the written directions of the Administrator(including, to the extent permitted by applicable federal law, a direct

distribution to one or more Employers of any excess assets of the Trust Fund remaining after all liabilities of the Plan and the Trust Fund to the participants and beneficiaries have been satisfied).

(b)   In the event of the withdrawal of any Employer from the Plan and to the extent permitted by the terms of the Plan and applicable law, the Trustee shall distribute the assets of the Trust Fund attributable to the participants employed by the Employer, and their beneficiaries, in accordance with the written directions of the Administrator.

(c)   Notwithstanding the provisions of subsections (a) and (b):

(1)   To the extent permitted by ERISA, the Trustee may pay, from the assets of the Trust Fund, the reasonable expenses involved in the termination of the Trust Fund prior to distributing the assets of the Trust Fund as directed by the Administrator; and

(2)   The Trustee shall not comply with any instruction to transfer assets of the Trust Fund to the funding agent of any other employee benefit plan unless the Trustee determines that such transfer of assets will comply with the requirements of the Code.

IN WITNESS WHEREOF, the Company has caused this Agreement to be signed by its duly authorized officer, and the Trustee has caused this Agreement to be signed by its duly authorized representative, effective as of _November 4_, 2015.

KRUSE WESTERN, INC.

By: _____

Its CEO

GREATBANC TRUST COMPANY, as
Trustee of the Western Milling Employee Stock
Ownership Trust

By: _____

Its Senior Vice President

distribution to one or more Employers of any excess assets of the Trust Fund remaining after all liabilities of the Plan and the Trust Fund to the participants and beneficiaries have been satisfied).

(b)       In the event of the withdrawal of any Employer from the Plan and to the extent permitted by the terms of the Plan and applicable law, the Trustee shall distribute the assets of the Trust Fund attributable to the participants employed by the Employer, and their beneficiaries, in accordance with the written directions of the Administrator.

(c)       Notwithstanding the provisions of subsections (a) and (b):

(1)       To the extent permitted by ERISA, the Trustee may pay, from the assets of the Trust Fund, the reasonable expenses involved in the termination of the Trust Fund prior to distributing the assets of the Trust Fund as directed by the Administrator; and

(2)       The Trustee shall not comply with any instruction to transfer assets of the Trust Fund to the funding agent of any other employee benefit plan unless the Trustee determines that such transfer of assets will comply with the requirements of the Code.

IN WITNESS WHEREOF, the Company has caused this Agreement to be signed by its duly authorized officer, and the Trustee has caused this Agreement to be signed by its duly authorized representative, effective as of __November 4__, 2015.

KRUSE WESTERN, INC.

By: _____
      Its CEO

GREATBANC TRUST COMPANY, as Trustee of the Western Milling Employee Stock Ownership Trust

By: _____
      Its Senior Vice President

#37039117_v4                                          -14-