UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO ZAVALA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN KRUSE, et al.,<br><br>Defendants. | Case No.: 1:19-cv-00239-ADA-SKO<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS<br><br>(ECF No. 132, 135) |

  On February 19, 2019, Plaintiff Armando Zavala ("Plaintiff") filed this putative class action against Defendants and Does 1 through 30, inclusive, alleging several claims under the Employment Retirement Income Security Act. (ECF No. 1.) Plaintiff filed a First Amended Complaint ("FAC") on August 16, 2019. (ECF No. 34.) He then filed a motion to amend the FAC on June 29, 2022, (ECF No. 95), and pursuant to this Court's order, (ECF No. 96), Plaintiff filed an amended motion to amend on June 30, 2022, (ECF No. 99).

  Defendant GreatBanc Trust Company ("GreatBanc") did not oppose Plaintiff's request to amend the FAC. (*See* ECF No. 95 at 2.) Defendants Kevin Kruse, the Kruse-Western, Inc. Board of Directors, and the Administration Committee ("the Company Defendants") filed an opposition brief on July 20, 2022. (ECF No. 116.) Plaintiff filed a reply brief on August 8, 2022. (ECF No. 119.) On July 14, 2022, the Company Defendants and GreatBanc filed requests to seal relating to Plaintiff's motion to amend. (ECF Nos. 110, 111.) On September 12, 2022, Defendants' requests

to seal and Plaintiff's motion to amend were referred to a United States Magistrate Judge for the issuance of findings and recommendations. (ECF No. 130.)

On December 21, 2022, the assigned Magistrate Judge issued findings and recommendations, recommending that Defendants' motions to seal and Plaintiff's motion to amend be granted. (ECF No. 132.) The parties were provided until January 11, 2023, in which to file objections to the findings and recommendations. (*See* ECF No. 132 at 14.) The Company Defendants filed their objections on January 10, 2023, (ECF No. 133), and Plaintiff filed his response on January 24, 2023, (ECF No. 136).

On January 23, 2023, Plaintiff filed requests to seal relating to Plaintiff's response to the Company Defendants' objections to the Magistrate Judge's findings and recommendations. (ECF No. 135.) Plaintiff expresses that his response should be under seal because it references many of the same documents that have already been approved for filing under seal. (*See* ECF No. 132 at 3, 14.) The materials contain confidential, proprietary information regarding Defendant's policies and business operations, and disclosure of such information could cause Defendants competitive harm. For the same reasons mentioned in the Magistrate Judge's findings and recommendations, the Court finds it appropriate for the materials to be sealed.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this Court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, the Court finds that the findings and recommendations are supported by the record and proper analysis. The Court finds that Plaintiffs have demonstrated that the Second Amended Complaint ("SAC") relates back to the date of the original pleading pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, particularly satisfying subsections 15(c)(1)(B) and (C).

///
///
///
///
///
///

**A. Plaintiff's proposed SAC asserts claims that arose out of the transaction set out in the original pleading.**

According to Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In their objections, the Company Defendants largely argue that the events of October 31, 2015, do not arise out of the transaction set out in the original pleading. (ECF No. 133 at 11.) The Court disagrees and finds that the two separate dates, October 31, 2015, and November 4, 2015, each constitute a step of what Plaintiffs refer to as the 2015 ESOP Transaction. (*See* ECF No. 95-1 at ¶ 2.)

The Court finds Plaintiff's reliance on *Neil v. Zell*, No. 08-C-6833, 2010 WL 11603191, at *11 (N.D. Ill. Mar. 11, 2010), persuasive to find that Western Milling's restructuring on October 31, 2015, is one of the steps of the 2015 ESOP Transaction. In *Neil*, the court found that ERISA § 406, which also authorizes some of Plaintiff's causes of actions, specifically targets indirect transactions to prevent parties from avoiding the law's restrictions through the interjection of a third party into an otherwise prohibited transaction. *Id.* There, the purchase of a company's stock that was eventually transferred to the ESOP was considered an indirect transaction between the company's shareholders and the ESOP, indicating that several events can constitute one large transaction. *Id.*

Like *Neil*, the Court suggests that the restructuring of Western Milling on October 31, 2015, may constitute an indirect transaction of the 2015 ESOP transaction. Certain Western Milling interest holders entered into a Membership Interest Purchase Agreement with Kruse Western, Inc. on October 31, 2015. (ECF No. 136 at 9.) As a result of the agreement, Kruse Western acquired the interest holders' ownership stake in Western Milling in exchange for $115,869,600 in promissory notes. (*Id.*) On that same date, the remaining members of Western Milling entered a tax-free exchange, selling their equity interest in Western Milling for a combined total of 2 million shares of Kruse Western stock. (*Id.*) These transactions are a part of restructuring Western Milling

into a wholly owned subsidiary of Kruse Western.  To finalize the 2015 ESOP Transaction, on November 4, 2015, Kruse Western and the selling shareholders of Western Milling entered into a Stock Purchase agreement with the ESOP, whereby the ESOP acquired all 2 million shares of Kruse Western in exchange for $244,130,400 in promissory notes.  (*Id.*)  Therefore, the Court finds that both dates fall within the 2015 ESOP transaction.[1]

Lastly, the Court notes that the SAC describes the events that took place on the two separate dates as "steps" of a greater transaction.  (*See* ECF No. 95-1 at ¶¶ 71, 73.)  The SAC provides, in part:

> The claims in this action stem from the ESOP's purchase of 100% of outstanding Kruse Western stock in 2015.  The ESOP acquired the stock through *a multi-step integrated transaction* in which Western Milling, LLC ("Western Milling") was reorganized as a wholly-owned subsidiary of Kruse Western, and the owners of Western Milling and Kruse Western were paid a total of $360 million (the "2015 ESOP Transaction").

(*Id.* at ¶ 2) (emphasis added).  The reorganization of Western Milling, LLC is portrayed as a multi-step integrated transaction that took place in 2015.  Therefore, the Court finds that the events that took place on both dates are steps that constitute the 2015 ESOP transaction.

### B. The new defendants received timely notice of the action and knew or should have known that the action would have been brought against them, but for a mistake concerning the proper party's identity.

In their objections, the Company Defendants argue that most of the newly added defendants were only added due to their alleged involvement in the October 31, 2015, restructuring transaction.  (ECF No. 133 at 12.)  Plaintiff claims that 20 of the new defendants are individuals or entities who sold their membership interests in Western Milling, LLC to Kruse Western, Inc. on October 31,

---

[1] The Court further finds Plaintiff's reliance on *Speak v. Fenkell*, No. 13-2391, 2016 WL 5661720, at *11 (E.D. Pa. Sept. 30, 2016), persuasive in this context.  In *Speak*, the court found that an ESOP funding transaction contemplated multiple steps and parties.  *Id.*  Even though there was a set of steps and various parties were involved, the court concluded that all parties "were united in a single purpose and plan."  *Id.*  Here, the Court finds that the October 31, 2015, and November 4, 2015, events appear to be dependent on one another, where without the first step, the secondary step would not make sense.  It appears that the 2015 ESOP Transaction contemplated multiple steps and parties, where they may all have been united in a single purpose and plan.  The application of such analysis supports granting leave to amend.

1   2015.  (*See* ECF No. 95-1 at 5-16.)  Because the Court finds that the October 31, 2015, events are
2   a part of the 2015 ESOP Transaction, the Court also finds that Plaintiffs may amend the complaint
3   to add those defendants involved in the October 31, 2015, transaction.  *See* Fed. R. Civ. P.
4   15(c)(1)(C).  However, Defendants still argue that Plaintiff cannot establish that the 20 new
5   defendants received notice of the litigation within 90 days after the original complaint was filed,
6   such that they would not be prejudiced in defending the merits.  *See* Fed. R. Civ. P. 15(c)(1)(C)(i).

7   In the response, Plaintiff argues that the newly named defendants received timely notice of
8   the action, precluding any prejudice against them in defending the action on the merits.  (ECF No.
9   136 at 26.)  On September 19, 2019, both the Board of Directors and the Administration Committee
10  were served, (ECF No. 41), and Plaintiff argues that it is reasonable to infer that the individuals
11  who accepted service shared the FAC with the remaining Board and Committee members.  (*Id.*)
12  With respect to the selling shareholders, Plaintiff notes that there is overlap between the Board,
13  Committee, and selling shareholders so that the parties provided each other notice of the litigation.
14  (*Id.*)  The Court agrees and finds that Plaintiff satisfies Rule 15(c)(1)(C)(i) of the Federal Rules of
15  Civil Procedure, where the newly named parties received notice of the action so that they will not
16  be prejudiced in defending on the merits.

17  Plaintiff also argues that the newly named defendants were flagged as Doe Defendants in
18  the original complaint and the FAC, where the defendants knew or should have known that the
19  action would have been brought against it.  *See* Fed. R. Civ. P. 15(c)(1)(C)(ii).  In the FAC, Plaintiff
20  alleges that "the ESOP trustee, GreatBanc Trust Company []; Kevin Kruse and *the other members*
21  *of the Board of Directors*; and *the Selling Shareholders*, orchestrated the sale of the Company to
22  the ESOP for greater than fair market value."  (ECF No. 34 at ¶ 4.)  The FAC further lists
23  "Defendant Kruse-Western Board of Directors," "Defendants John and Jane Does 1-10 are the other
24  individual members of the Board of Directors of Kruse-Western from 2014 until the present," and
25  "John and Jane Does 21-30 are the other selling shareholders who sold their stock in the Company
26  to the ESOP in the 2015 ESOP transaction" as Defendants, which would have put the newly named
27  defendants on notice.  (*Id.* at ¶¶ 15, 16, 24.)  Given the FAC, the Court finds that Plaintiff effectively
28

put on notice the board of directors and selling shareholders not originally named in the action, which precludes any prejudice against them defending the merits.

### C. The majority of Company Defendants' arguments constitute a premature motion to dismiss the complaint.

Lastly, the Court addresses the Company Defendants' argument that the proposed Second Amended Complaint ("SAC") is futile, and that futility alone justifies the denial of a motion to amend. (ECF No. 133 at 10.) The Court, however, finds that most of the Company Defendants' arguments constitute a premature motion to dismiss the SAC.[2] "[S]ufficiency of an amended pleading ordinarily will not be considered on motion for leave to amend." *Breier v. N. Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963). "Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Dickey v. Vital One Health Plans Direct, LLC*, No. 1:18-cv-01399-DAD-BAM, 2019 WL 2545500, at *3 (E.D. Cal. June 20, 2019) (quoting *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *see also Unisone Strategic IP, Inc. v. Tracelink, Inc.*, No. 3:13-cv-1743-GPC-LL, 2019 WL 4015837, at *2 (S.D. Cal. Aug. 26, 2019) ("Denial of leave to amend for futility is rare since Courts typically defer consideration on the merits until after an amended pleading has been filed.").

The Company Defendants argue that denying the amendment on the grounds of futility "will greatly advance judicial efficiency." (ECF No. 133 at 10.) They warn that the addition of multiple new defendants may result in dozens of motions to dismiss. (*Id.*) They further argue that Plaintiffs' claims would not survive a Rule 12(b)(6) motion, which supports denying leave to amend. (*Id.* at 21.) The Company Defendants also rely on *Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011), to assert

---

[2] The Court acknowledges the Company Defendants' arguments that the Magistrate Judge incorrectly concluded that the limitation period in 29 U.S.C. § 1113(1) was not a statute of repose and that the amendment was not time barred, (ECF No. 133 at 14); that no action was commenced against the newly named Defendants within the requisite six-year period, (ECF No. 133 at 17); and that the new plaintiffs did not commence an action within six years, (ECF No. 133 at 20). However, the successful application of the relation back doctrine under Rule 15 of the Federal Rules of Procedure renders unnecessary an analysis of the aforementioned arguments.

that a proposed amended complaint is futile if it would be immediately subject to dismissal. *Id.* at 788 n.12.

Initially, the Court recognizes the possibility of multiple motions to follow granting leave to amend, but the parties would be required to meet and confer prior to filing a motion, which would likely consolidate and narrow the scope of such motions. (*See* E.D. Cal. S.O.J. de Alba at 2.) Unlike *Nordyke*, the Court cannot conclude that the proposed SAC would be immediately subject to dismissal. The Court agrees with the Magistrate Judge that any factual disputes are not appropriately resolved at this stage of the proceedings. Therefore, the lack of futility, along with all other factors, weighs in favor of allowing amendment of the complaint.

### D. Conclusion

Accordingly,

1. The Court grants Plaintiff's request to seal, (ECF No. 135), and orders the parties to meet and confer on appropriate redactions of the documents under seal, to file an unredacted copy of the documents under seal, and to file a redacted version of the documents publicly on the Court's docket;

2. The findings and recommendations issued on December 21, 2022, (ECF No. 132), are adopted in full, including granting Defendants' requests to seal, (ECF Nos. 110, 111); and

3. Plaintiff's amended motion for leave to amend the FAC, (ECF Nos. 95, 99), is granted.

IT IS SO ORDERED.

Dated:   March 7, 2023

UNITED STATES DISTRICT JUDGE

7